2012-1356
(Serial No. 77/660,948)

# In the United States Court of Appeals for the Federal Circuit

### IN RE CITY OF HOUSTON

**Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.**

### BRIEF FOR APPELLANT
### CITY OF HOUSTON

Mark G. Chretien
Ben D. Tobor
Anthony F. Matheny
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3528
Facsimile: (713) 754-7528
Attorneys for Appellant
City of Houston

Form 9

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

IN RE CITY OF HOUSTON

No. 12-1356

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

City of Houston _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

City of Houston

_____

_____

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

_____

_____

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

_____

_____

_____

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Greenberg Traurig LLP,   Mark G. Chretien,   Ben D. Tobor,   Anthony F. Matheny

_____

05/07/12
Date

Signature of counsel

Mark G. Chretien
Printed name of counsel

Please Note: All questions must be answered
cc: Raymond T. Chen _____

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .............................................................. ii

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES ................................................................ v

STATEMENT OF RELATED CASES ................................................. vii

JURISDICTIONAL STATEMENT…………………………………............1

I.     STATEMENT OF THE ISSUE ................................................... 2

II.    STATEMENT OF THE CASE ..................................................... 3

    A.     Nature Of The Case .......................................................... 3

    B.     Proceedings At The USPTO ............................................. 3

III.   STATEMENT OF THE FACTS .................................................. 6

IV.    SUMMARY OF THE ARGUMENT ........................................... 7

V.     ARGUMENT .............................................................................. 9

    A.     Standard Of Review ......................................................... 9

    B.     Background ....................................................................... 9

    C.     The TTAB Failed to Properly Construe the Term "Applicant" In § 2(b) .......................................................... 10

    D.     In the Context of § 2(b), "Applicants" That Are Government Entities Should Be Permitted To Register Their Own Insignia ......... 12

    E.     The Proposed Construction of "Applicant" in the Context of § 2(b) Would Not Affect the Remainder of § 2 .................................... 14

VI.    CONCLUSION ......................................................................... 20

ADDENDUM

CERTIFICATE OF SERVICE

HOU 407,623,346v1

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Federal Cases

*Atlantic Cleaners & Dyers, Inc. v. United States,*
    286 U.S. 427 (1932) ....................................................................... 14,17

*Dewsnup v. Timm,*
    502 U.S. 410 (1992) ....................................................................... 15,17

*Environmental Defense v. Duke Energy Corp.,*
    549 U.S. 561 (2007) ....................................................................... 14,17

*In re Bose Corp.,*
    580 F.3d 1240 (Fed. Cir. 2009) ....................................................... 9

*In re Int'l Flavors & Fragrances Inc.,*
    183 F.3d 1361 (Fed. Cir. 1999) ....................................................... 9

*Park' N Fly, Inc. v. Dollar Park and Fly, Inc.,*
    469 U.S. 189 (1985) ......................................................................... 18

*Rescuecom Corp. v. Google Inc.,*
    562 F.3d 123 (2d Cir. 2009) ........................................................... 11

## Federal Statutes

15 U.S.C. § 1051. .................................................................................. 18

15 U.S.C. § 1052. ................................................................ 3,7,8,14,15,16,17,18

15 U.S.C. § 1052(a). ........................................................................... 15,16

15 U.S.C. § 1052(b) ...................................... 2,3,4,5,7,8, 9,10,11,12,13,14,15,16,17

15 U.S.C. § 1052(c). ........................................................................... 15,16

15 U.S.C. § 1052(d). ............................................................................. 15

v

15 U.S.C. § 1052(e). ........................................................ 15,16

15 U.S.C. § 1052(f). ........................................................ 15

15 U.S.C. § 1071(a)(1) ........................................................ 1

15 U.S.C. § 1127 ........................................................ 7,10,11,18

28 U.S.C. § 1295(a)(4)(B) ........................................................ 1

## Other Authorities

S. Rep. No. 1333, 79th Cong., 2d Sess., 3-5 (1946)................................ 18

HOU 407,623,346v1

## STATEMENT OF RELATED CASES

There have been no other appeals before this or any other appellate court in connection with this proceeding.

Counsel for the City of Houston is aware of *In re District of Columbia*, relating to U.S. Trademark Application Serial No. 77/643,857 (filed January 6, 2009), which has similar issues as the present case and was mentioned by the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office in its decision on which this appeal is based. The City of Houston understands that *In re District of Columbia* is also presently on appeal before this Court. Otherwise, counsel for the City of Houston is not aware of any other cases pending in this or any other Court that will directly affect or be directly affected by this Court's decision.

## JURISDICTIONAL STATEMENT

This is an appeal from a final decision of the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office affirming the Trademark Examining Attorney's refusal to register the mark in the City of Houston's pending application.  This Court has jurisdiction over the appeal pursuant to 15 U.S.C. § 1071(a)(1) and 28 U.S.C. § 1295(a)(4)(B).

1

## I.     STATEMENT OF THE ISSUE

Did the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office err in finding that 15 U.S.C. § 1052(b) of the Trademark Act bars registration when the applicant is a government entity seeking to register as a mark its own flag, coat of arms or other insignia?

2

## II.    STATEMENT OF THE CASE

### A.    Nature Of The Case

This is an appeal of a precedential decision (the "Decision") of the TTAB holding that 15 U.S.C. § 1052(b) [Lanham Act § 2(b)] bars a government entity from federally registering its own Insignia[1] under the Lanham Trademark Act (15 U.S.C. § 1051, *et seq*., hereinafter referred to as the "Lanham Act"). A219. For purposes of this Brief, 15 U.S.C. § 1052(b) is referred to herein as "§ 2(b)" or "Section 2(b)," and 15 U.S.C. § 1052 is referred to herein as "§ 2" or "Section 2."

### B.    Proceedings At The USPTO

On February 1, 2009, the City of Houston ("City of Houston") filed U.S. Application Serial No. 77/660,948 for the mark CITY OF HOUSTON (and design) with the U.S. Patent and Trademark Office ("USPTO") for use in connection with "municipal services, namely, promoting trade, commerce, economic development and tourism; city administrative services, namely, business administration and management of municipality services," in International Class 35, and "municipal services, namely, providing public utilities services," in International Class 39. A27.

---

[1] For ease of reference, this Brief shall refer to a flag, coat of arms or other insignia, including the official seal of the City of Houston, as an "Insignia" unless otherwise indicated.

3

On December 17, 2009, a non-final office action was issued in which the Trademark Examining Attorney concluded that the City of Houston's mark was unregisterable under 15 U.S.C. § 1052(b).  A89.

On June 16, 2010, the City of Houston timely filed its response to the non-final office action.  A100.   In its response, the City of Houston argued that: (i) the statutory language should be construed to allow a city to register its own official seal to identify services that the city provides to its citizens in connection with the seal;  (ii) the subject mark was being registered for use in connection with services provided by the City of Houston, and not as an "emblem of national authority"; and (iii) at least thirteen other cities had been allowed to register their city seals, with at least one of these registrations issuing after the City of Houston's mark had been rejected.  A102-08.

On July 21, 2010, the Trademark Examining Attorney made final the refusal to register, concluding that 15 U.S.C. § 1052(b) bars registration of Insignia of any state or municipality "on its face" and does not provide any exceptions for a city to register its own official Insignia.  A137.

On January 14, 2011, the City of Houston filed a Notice of Appeal with the Trademark Trial and Appeal Board ("TTAB").  A147.   On March 15, 2011, the City of Houston filed its Appeal Brief.  A149.  On April 20, 2011, the Trademark

Examining Attorney filed his Appeal Brief.  A188.  On May 9, 2011, the City of Houston filed its Reply Brief.  A197.

On January 18, 2012, the TTAB issued the Decision finding that 15 U.S.C. § 1052(b) bars registration when the applicant is a government entity seeking to register as a mark its own Insignia, and affirming the Trademark Examining Attorney's refusal to register the City of Houston's mark.  A219.

On March 16, 2012, the City of Houston timely filed its Notice of Appeal with this Court.  A243.

## III.   STATEMENT OF THE FACTS

The City of Houston's mark which is sought to be registered in U.S. Trademark Application Serial No. 77/660,948 (filed February 1, 2009) is:



(hereinafter "City Seal" or "Seal").   A34.   The City of Houston is seeking to register the City Seal in connection with municipal services, namely, promoting trade, commerce, economic development and tourism; city administrative services, namely, business administration and management of municipality services, in International Class 35; and in connection with municipal services, namely, providing public utilities services, in International Class 39.   A31-32.   The City of Houston has been continuously and exclusively using the City Seal in connection with these services since at least February 1, 2009.   A31-32.

HOU 407,623,346v1

## IV.    SUMMARY OF THE ARGUMENT

The City of Houston respectfully submits that the TTAB erred in holding that 15 U.S.C. § 1052(b) does not allow government entities to register their own Insignia.  The TTAB interpreted § 2(b), in a vacuum, as barring registration of Insignia of any municipality "on its face," and ignored other sections of the Lanham Act.  A137.  In particular, the TTAB did not consider in its analysis the definition of "applicant" in the definitions sections of 15 U.S.C. § 1127 [Lanham Act § 45] ("Section 45" or "§ 45").  In Section 45, Congress made clear that its definitions are not to be restricted to the same meaning throughout the statute, and the defined terms can have different meanings in different statutory contexts.  In the narrow context of § 2(b), the term "applicant" should be construed such that government entities that are legitimate mark owners may register their Insignia, while "bad actors" who want to confuse and harm citizens are prevented from obtaining registrations.  There is no controlling precedent or legislative history on this issue that would prevent the Court from making a statutory interpretation that favors the registration of marks by legitimate mark owners and prohibits registration by "bad actors."  Also, there is no overriding public policy reason for prohibiting government entities from registering their own Insignia under § 2(b), and there is precedent from the U.S. Supreme Court that supports the City of Houston's proposed prescribing of different meanings to the term "applicant" as

7

used in different places in § 2. Finally, the City of Houston's proposed construction of § 2(b) would be in accordance with the legislatively expressed goals and objectives of the Lanham Act. For at least these reasons, the City of Houston respectfully requests that the TTAB's decision be reversed and that its application be remanded to the USPTO with instructions to allow registration of the City of Houston's mark.

HOU 407,623,346v1

## V.   ARGUMENT

### A.   Standard Of Review

The Federal Circuit reviews legal conclusions of the TTAB, such as interpretation of the Lanham Act, *de novo*.  *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009); *In re Int'l Flavors & Fragrances Inc.*, 183 F.3d 1361, 1365 (Fed. Cir. 1999).

### B.   Background

This appeal raises an issue of first impression before the Court, that is, whether § 2(b) of the Lanham Act bars registration when the applicant is a government entity seeking to federally register as a mark its own Insignia.  Section 2(b) states, in relevant part, that:

> "no trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it ...
>
> (b) consists of or comprises the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof."

15 U.S.C. § 1052(b).

There is very little legislative history discussing § 2(b) and, prior to the TTAB's Decision, judicial scrutiny and agency interpretation of this statute has been limited.

### C.    The TTAB Failed to Properly Construe
the Term "Applicant" In § 2(b)

At the heart of this appeal is the proper construction of the term "applicant"
in § 2(b).  In its Decision, the TTAB construed "applicant" in § 2(b) to include
both government and private entities, thus preventing both parties from registering
any official Insignia.  The City of Houston respectfully submits that this
construction is in error because the TTAB only looked at § 2(b) in isolation, and
did not consider 15 U.S.C. § 1127 ("Section 45" or "§ 45") in its analysis.  Section
45 is the "Constructions and Definitions" section of the Lanham Act and sets forth
the meaning of the term "applicant."  The City of Houston submits that an analysis
of § 45 is necessary for proper understanding of the meaning of "applicant" in the
context of § 2(b).

Section 45 states in pertinent part:

> In the construction of this Act, unless the contrary is plainly
> apparent from the context--
>
> * * *
>
> The term "person" and any other word or term used to
> designate the applicant or other entitled to a benefit or privilege
> or rendered liable under the provisions of this Act includes a
> juristic person as well as a natural person. The term "juristic
> person" includes a firm, corporation, union, association, or
> other organization capable of suing and being sued in a court of
> law.
>
> The term "person" also includes the United States, any agency
> or instrumentality thereof, or any individual, firm, or

10

> corporation acting for the United States and with the authorization and consent of the United States. The United States, any agency or instrumentality thereof, and any individual, firm, or corporation acting for the United States and with the authorization and consent of the United States, shall be subject to the provisions of this Act in the same manner and to the same extent as any nongovernmental entity.
>
> The term "person" also includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this Act in the same manner and to the same extent as any nongovernmental entity.

15 U.S.C. § 1127.

The opening phrase of § 45 sets forth a guideline for how the term "applicant" or any other terms defined in this section should be interpreted by indicating that all of the provided definitions are applicable "unless the contrary is plainly apparent from the context."  By including this particular language, Congress made clear that the definitions are not to be restricted to the same meaning throughout the statute. *See, e.g., Rescuecom Corp. v. Google Inc*., 562 F.3d 123, 132 (2d Cir. 2009).   Instead, the defined terms can have different meanings in different statutory contexts.  *See id*.  Thus, context is critical in determining how the term "applicant" should be interpreted in § 2(b).

HOU 407,623,346v1

### D.    In the Context of § 2(b), "Applicants" That Are Government Entities Should Be Permitted To Register Their Own Insignia

The term "applicant" should be particularly construed in the context of Section 2(b) such that an "applicant" that is a government entity can register its own official Insignia.  As a matter of public policy, government entities should be protected from having their Insignia misappropriated or used for improper commercial purposes by private parties.  Government entities provide a wide range of services to their citizens, and rely on their city seals and other Insignia to identify themselves as the source of these services.  The unauthorized use of these Insignia by private parties would cause confusion and/or mislead consumers as to the origin, sponsorship, or approval by the government entity of other parties' goods, services, or commercial activities, and registration can aid in preventing such misuses.

For example, the City of Houston is seeking to register its official Insignia in International Class 35 for services relating to promoting trade and commerce. Suppose a private party were to advertise its own tourism-related services using the City of Houston's official Insignia without permission.  Some citizens might mistakenly believe that this other party is somehow sponsored or authorized by the City of Houston to provide these services.  This very well could result in consumer confusion with the results being quite unfortunate or detrimental to the public.  For

12

instance, citizens could be misled into sending personal or confidential information to this private party, in the belief that the party is a official agency of the City of Houston.  To prevent this from occurring, the government entity should be able to "vouch for" the quality and authenticity of services provided under its official Insignia and have the benefits of a federal registration to police and prevent the unauthorized use of its Insignia by "bad actors."

Unfortunately, the TTAB's interpretation of § 2(b) in its Decision hinders a government entity's ability to providing this vital consumer protection to its citizens.  Because of the TTAB's ruling, a government entity cannot seek a federal registration for its Insignia and cannot take advantage of all the protections that such a registration can provide, such as a *prima facie* indication that the government entity is the exclusive source of the services for which the mark is registered.   In this regard, the present statutory interpretation prevents the interests of justice from being served and should be reconsidered.   To not permit a government entity to protect its Insignia only serves the interests of "bad actors" who want to confuse and harm unknowing citizens.

There is no overriding policy reason for prohibiting municipalities from registering their own Insignia.  The TTAB did not articulate a persuasive policy argument in its Decision, and in fact, before the TTAB's Decision, the ongoing policy of the USPTO was to allow municipalities to register their Insignia.  This is

13

evidenced by the thirteen active registrations on the Principal Register for Insignia of municipalities that the City of Houston submitted in its briefing to the TTAB. A201-216. The pattern of prior action by the USPTO over the past years in issuing these other registrations to government entities is clear and telling. The City of Houston respectfully submits that § 2(b) is not being applied uniformly, and it is inequitable for the TTAB to single out and refuse registration to the City of Houston for its Insignia in view of these numerous registrations issued to other parties for their Insignia. The City of Houston also notes that affirming the TTAB's Decision in the present appeal would render the thirteen other active registrations for Insignia, some of which are eligible for incontestable status, effectively invalid.

### E. The Proposed Construction of "Applicant" in the Context of § 2(b) Would Not Affect the Remainder of § 2

The City of Houston's proposed construction of the term "applicant" for Section 2(b) would not affect how that term should be construed for the remainder of § 2, or for any other section of the Lanham Act. To the contrary, the use of "applicant" in each subsection of § 2, or in each other section of the Lanham Act, can be interpreted independently and in its own context. *See Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932); *accord Environmental*

14

*Defense v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007); *See also Dewsnup v. Timm*, 502 U.S. 410, 417 (1992).

The full text of § 2 is provided as an Addendum to this Brief. Section 2 contains a preamble and six independent, alphabetically designated subsections (Section 2(a)- Section 2(f)). The preamble indicates that:

> "[n]o trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register account of its nature unless it…"

15 U.S.C. § 1152(b).

This preamble is then linked to the six independent subsections, five of which (§ 2(a) - § 2(e)) provide exceptions to the presumption of registrability set forth in the preamble. The subsections each end with a period, thus making them independent from each other for purposes of construction and applicability. For all intents and purposes, each particular subsection can be read to include the preamble, and thus, to include the term "applicant."

Notably, section 2(b) is the only one of these subsections of "exceptions" that can support a construction where the term "applicant" in the subsection does not apply to a "bad actor." Sections 2(a), 2(c), 2(d) and 2(e) all apply to "applicants" that are seeking to either (i) take advantage of the true owner of the mark or (ii) obtain rights in a mark that they should not have. Some representative examples of these "bad actors" are "applicants" seeking to register immoral or

15

scandalous marks (§ 2(a)), marks identifying other living individuals (§ 2(c)), or marks that are deceptively misdescriptive (§ 2(e)). Section 2(b) also has an element that applies to "bad actors," to the extent it seeks to prevent private parties from registering government Insignia.

The government entity "applicant" of § 2(b) seeking to register its own Insignia is the only "applicant" under § 2 that does not fall within this group of "bad actors." But according to the Decision, the government entity "applicant" is lumped in with these "bad actors" and prohibited from seeking registration under the broad interpretation of the statute proposed by the TTAB. Given the context and lack of legislative history, it seems clear that Congress never intended for government entity "applicants" to be excluded from registering their own marks under § 2(b). These "applicants" are simply caught up in the web of a complex statutory framework. This Court should provide a reasonable statutory interpretation that avoids this unintended consequence by construing a government entity "applicant" as a different kind of "applicant" from these "bad actors" for purposes of § 2(b).

This proposed prescribing of different meanings to the term "applicant" in the statute is permitted by the case law. As indicated by the U.S. Supreme Court, courts are not required to interpret the same term in the same way for all purposes in a statute:

16

"Most words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section....

[t]he natural presumption that identical words used in different parts of the same act are intended to have the same meaning ... is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.

It is not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the legislature intended it should have in each instance...."

*Atlantic Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433 (1932);

*accord Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561, 574

(2007); *see also Dewsnup v. Timm*, 502 U.S. 410, 417 (1992).

Further, the U.S. Supreme Court has recognized that policy implications can

drive the varied construction of a term that is used multiple times in a statute:

"A given term in the same statute may take on distinct characters from association with distinct statutory objects calling for different implementation strategies."

*Environmental Defense*, 549 U.S. at 574.

The City of Houston is not asking this Court for a construction of the term

"applicant" in all subsections of § 2.  Instead, it only seeks construction of the term

"applicant" with respect to § 2(b) in the narrow context of a government entity

"applicant" attempting to register its own Insignia.  There is nothing in the case

17

law or the legislative history of the statute that would prevent a construction that favors registration in this narrow context.

The overriding policy goals and objectives of the Lanham Act also support the City of Houston's proposed statutory construction.  The very purpose of the Lanham Act is to:

> "secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers. National protection of trademarks is desirable, Congress concluded, because trademarks foster competition and the maintenance of quality by securing to the producer the benefits of good reputation."

*Park' N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985), citing S. Rep. No. 1333, 79th Cong., 2d Sess., 3-5 (1946).  Congress determined that a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them.  *Id*. at 193.  Further, the first provision (Section 1(a)(1)) of the first section (§ 1051) of the Lanham Act expressly provides that "owners" of trademarks shall have the right to request registration for their marks. 15 U.S.C. § 1051.  Also, the statutorily expressed "intent" of the Lanham Act is to "protect persons engaged in … commerce from unfair competition."  15 U.S.C. § 1127.  Interpreting § 2 to reward "bad actors" who create consumer confusion and prevent legitimate mark owners who are not "bad actors" from registering their marks does not align with any of these legislatively expressed goals and objective.

18

Finally, the narrow legal issue presented here is one of first impression. There is no controlling precedent or legislative history on this issue that would prevent the Court from making a statutory interpretation that favors the registerability of marks by legitimate mark owners and prohibits registration by "bad actors."  To the extent barring government entities from registering their own Insignia is merely an unintended consequence of an ambiguous statutory framework, this Court now has an opportunity to set forth a corrective construction of the statute.  The statutory construction proposed by the City of Houston would be in accordance with the legislatively expressed goals and objectives of the Lanham Act and would not contravene public policy.  As such, the City of Houston respectfully requests that the TTAB's Decision be reversed.

HOU 407,623,346v1

## VI.    CONCLUSION

For the reasons set forth above, the City of Houston respectfully requests that the TTAB's decision be reversed, and that the City of Houston's application be remanded to the USPTO with instructions to allow registration of the City of Houston's mark.

Respectfully submitted,

Dated:  June 27, 2012            By:        /s/markgchretien

Mark G. Chretien
Ben D. Tobor
Anthony F. Matheny
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77021
Telephone: (713) 374-3528
Facsimile: (713) 754-7528
chretienm@gtlaw.com
Attorneys for Appellant
City of Houston

# ADDENDUM

THIS DECISION IS A
PRECEDENT OF THE TTAB

Mailed: January 18, 2012

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**

————

In re City of Houston

————

Serial No. 77660948
Filed February 1, 2009

————

Mark G. Chretien and Ben D. Tobor of Greenberg Traurig LLP
for applicant.

Sally Shih, Examining Attorney, Law Office 106, Mary I.
Sparrow, Managing Attorney.

————

**Before Kuhlke, Cataldo, and Mermelstein, Administrative**
**Trademark Judges.**

**Opinion by Mermelstein, Administrative Trademark Judge:**

The City of Houston, Texas seeks registration on the

Principal Register of the following mark:



for "municipal services, namely, promoting trade, commerce,

economic development and tourism; city administrative

services, namely, business administration and management of

Serial No. 77660948

municipality services," in International Class 35; and

"municipal services, namely, providing public utilities

services," in International Class 39.[1]

Registration has been finally refused on the ground

that the mark "includes a governmental insignia of the City

of Houston."  Trademark Act § 2(b), 15 U.S.C. § 1052(b).

Applicant appealed, and the appeal has been fully briefed.

This appeal raises an issue of first impression:  Does

Trademark Act § 2(b) bar registration when the applicant is

a government entity seeking to register as a service mark

its own flag, coat of arms, or other insignia?  We conclude

that it does, and we accordingly affirm the refusal to

register.[2]

## I.  Preliminary Issues

Applicant attached several exhibits to its opening

---

[1] The application is based on an allegation of first use and use in commerce as of February 1, 2009, for both classes.  Applicant has disclaimed the exclusive right to use "CITY OF HOUSTON TEXAS" apart from the mark as shown.  The application contains the following description of the mark:

- The mark consists of a circular seal having a rope pattern contour with a design of a plow, a locomotive and a five pointed Texas star, and the wording "CITY OF HOUSTON TEXAS" within the seal and a fleur de lis on each side of the term "TEXAS".

[2] We also decide today *In re Gov't of the Dist. of Columbia*, __ USPQ2d __, App. No. 77643857 (TTAB Jan. 18, 2012), involving similar legal issues.

brief on appeal,[3] and in its brief listed thirteen third-party registrations in support of its argument. *See* App. Br. at 10. Copies of the thirteen listed registrations were attached to applicant's reply brief. In her brief on appeal, the examining attorney objected to consideration of both the listed third-party registrations and the other evidence attached to applicant's brief, on the ground neither were timely, and that the list of registrations was insufficient to make them of record. Ex. App. Br. at 6.

The examining attorney's objection to the exhibits to applicant's opening brief is overruled. All of this material was submitted during examination, in connection with applicant's June 18, 2010, response to an Office action. While there was no need to attach additional copies to applicant's appeal brief, *Life Zone Inc. v. Middleman Group Inc*., 87 USPQ2d 1953, 1955 (TTAB 2008) (evidence attached to briefs will almost always be either untimely or duplicative, and in either event should not be filed), striking this material would be pointless as it is already properly of record.

_____

[3] The exhibits to applicant's brief consisted of a copy of Trademark Act § 2 (Exh. A); a copy of the Trademark Act of 1905, § 5 (Exh. B); two pages of what appear to be errata pertaining to a law journal article, *Flags and Seals of Texas*, 33 S. Tex. L. Rev. 215, pp. vi-vii (1992) (Exh. C); and an excerpt from a book, SCOT M. GUENTER, THE AMERICAN FLAG, 1777-1924, 132-153, 228-233 (1990) (Exh. D).

Serial No. 77660948

With respect to the list of thirteen third-party
registrations set out in applicant's opening brief and the
copies of those registrations attached to applicant's reply
brief, we note that those same registrations were listed[4] in
applicant's June 18, 2010, response to an Office action.
In her final refusal, the examining attorney neither
discussed applicant's listed registrations, nor did she
inform applicant that a mere list was not a proper means to
introduce registrations into the record.[5]

---

[4] Only the registration number and literal elements of the marks
appear in applicant's lists; any design elements in the marks
were not set out in either applicant's response to the Office
action or in applicant's opening brief, nor is other information
such as the names of the registrants provided.

[5] It is well-established that in order to make third-party
registrations properly of record, "applicant should submit copies
of the registrations themselves, or the electronic equivalent
thereof" from the USPTO's electronic databases, now known as TARR
or TESS. *In re Broadway Chicken Inc.*, 38 USPQ2d 1559, 1560 n.6
(TTAB 1996) (citing *In re Smith and Mehaffey*, 31 USPQ2d 1531
(TTAB 1994)).  Such submissions should be made prior to appeal
or, if after appeal, pursuant to a remand of the matter to the
examining attorney for further examination.  Trademark Rule
2.142(d).

Records of registrations can change over time.  The
requirement for submission of copies of cited third-party
registrations provides a definitive record for the USPTO to
review, both during examination and upon appeal to the Board, and
provides clear notice to interested parties and the public of the
record upon which an administrative decision regarding
registrability was made.  Similarly, the USPTO must provide a
complete record of a proceeding for any reviewing court.  *See* 35
U.S.C. § 143 ("[T]he Director shall transmit to the United States
Court of Appeals for the Federal Circuit a certified list of the
documents comprising the record in the Patent and Trademark
Office.  The court may request that the Director forward the
original or certified copies of such documents during pendency of
the appeal."); Trademark Rule 2.191.  Submission of copies of

4

We find that the examining attorney's failure to
advise applicant of the insufficiency of the list of
registrations when it was proffered during examination
constituted a waiver of any objection to consideration of
that list.  Accordingly, we will consider the same <u>list</u> of
registrations set out in applicant's opening brief "for
whatever limited probative value such evidence may have."
*In re Broyhill Furniture Indus. Inc*., 60 USPQ2d 1511, 1513,
n.3 (TTAB 2001).

We reach a different conclusion with respect to the
copies of applicant's thirteen listed third-party
registrations attached to its reply brief.  "The record in
the application should be complete prior to the filing of
an appeal.  The ... Board will ordinarily not consider
additional evidence filed with the Board by the appellant
or by the examiner after the appeal is filed."  Trademark
Rule 2.142(d).  This is especially true with respect to
evidence submitted for the first time with a reply brief,
to which the examining attorney may not respond.  *In re
Zanova Inc*., 59 USPQ2d 1300, 1302 (TTAB 2001) ("By
attempting to introduce evidence with its reply brief,
applicant has effectively shielded this material from

---

cited registrations enables the USPTO to fulfill its
responsibility to a reviewing court in the event of an appeal.

5

Serial No. 77660948

review and response by the Examining Attorney."). If
applicant wished to submit proper evidence of its third-
party registrations after filing its appeal, it should have
requested a remand for that purpose, which – if granted[6] –
would have given the examining attorney an opportunity to
examine the new evidence and respond to it appropriately.
Trademark Rule 2.142(d). Applicant having failed to do so,
we find the evidence submitted with applicant's reply brief
"manifestly untimely," and we have not considered it.[7] *In*

---

[6] We do not suggest that such a request would have been granted.
A request for remand will only be granted upon a showing of good
cause. *See generally*, TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF
PROCEDURE ("TBMP"), § 1207.02 (3d ed. 2011) (and cases cited
therein). Whether good cause has been demonstrated will depend,
*inter alia*, on the point in the appeal at which the request is
made and the reason for the delay in submitting the evidence.

[7] Applicant argues that the evidence attached to its reply brief
should be considered because the examining attorney failed to
object to its list of registrations submitted during examination.
Reply Br. at 3-4 (citing *Broyhill*, 60 USPQ2d at 1513 n.3).
Applicant misreads *Broyhill*. That case did not permit submission
of proper evidence of the listed registrations with Broyhill's
brief, let alone its reply brief. In *Broyhill*, "the <u>sole</u>
evidence cited by applicant ... [was] a <u>list</u> of five third-party
registrations." 60 USPQ2d at 1513 (emphasis added). Upon the
examining attorney's objection in her brief to "such evidence,"
*i.e.*, the list, we held the objection waived, *id.* at n.3, and
considered "applicant's evidence regarding ... third-party
registrations ... for whatever limited probative value such
evidence may have." *Id*. The waiver in *Broyhill* was thus limited
to the evidence which was improperly submitted during examination
but not objected to – Broyhill's <u>list</u> of registrations. *See also*
*In re Dos Padres Inc.*, 49 USPQ2d 1860, 1861 n.2 (TTAB 1998).

In this case, the examining attorney's failure to object during
examination constituted a waiver of objection only to the
evidence which was improperly submitted during examination,
namely, the list of registrations. The absence of an objection
to the list was not a waiver of any objection to the future
untimely submission of the registrations with applicant's brief

re *Petroglyph Games Inc.*, 91 USPQ2d 1332, 1334 (TTAB 2009).

## II.  Interpretation of Trademark Act § 2(b)

### A.  Statutory Provisions

The relevant statutory language provides as follows:

> No trademark by which the goods of the applicant
> may be distinguished from the goods of others
> shall be refused registration on the principal
> register on account of its nature unless it—
>
> ...
> Consists of or comprises the flag or coat of arms
> or other insignia of the United States, or of any
> State or municipality, or of any foreign
> nation,[8] or any simulation thereof.

Trademark Act § 2(b); 15 U.S.C. § 1052(b).

The quoted provision is substantially similar to a

provision of the earlier Trademark Act of 1905, which read

as follows:

> [N]o mark by which the goods of the owner of the
> mark may be distinguished from other goods of the
> same class shall be refused registration as a
> trade-mark on account of the nature of such mark
> unless such mark
>
> ...
> Consists of or comprises the flag or coat of arms
> or other insignia of the United States or any
> simulation thereof, or of any State or

_____

or reply brief.  Our consideration of these third-party
registrations is thus limited to the information which applicant
listed at page 8 of its June 18, 2010, Office action response
(and which is repeated at page 10 of its opening brief).

[8] For ease of reference, we refer generally to "the flag or coat
of arms or other insignia of the United States or of any State or
municipality, or of any foreign nation" (and to their equivalent
in the 1905 statute and the Paris Convention) as governmental or
official insignia.

Serial No. 77660948

municipality or of any foreign nation....

Trademark Act of 1905, § 5, ch. 592 § 5, 33 Stat. 724

(1905) (repealed 1946).

### B.   Construction

As explained at greater length in *District of*

*Columbia*,

> [w]e find the quoted language of the current
> statute – and that of its predecessor – to be
> plain and clear on its face.  Reversing the
> negative syntax of Section 2, we read the quoted
> subsection to bar registration of any mark which
> is or includes the "coat of arms or other
> insignia of ... any ... municipality."  While the
> text does not resolve all definitional issues
> (*i.e.*, what constitutes "other insignia" or a
> "simulation"), those questions are not at issue
> in this case.  Further, we find the statute to be
> uniform in its applicability.  The text of the
> statute offers no exception to the prohibition on
> registration, even when a governmental entity
> applies to register its own official insignia.

Slip op. at 12-13 (footnote omitted).

Applicant argues that "Trademark Act Section 2(b) is

silent as to whether or not countries, states, or

municipalities may register their own insignia."  App. Br.

at 6.  We disagree.  While it is true that Section 2(b)

does not explicitly answer applicant's narrow question, it

clearly provides an answer because it requires refusal of

registration when the applied-for mark "consists or

comprises the flag or coat of arms or other insignia of ...

any ... municipality."  The statute is not "silent" as to

Serial No. 77660948

whether a municipality may register its own official
insignia – it provides that *all* such marks are to be
refused.  The specific statement that applicant finds
missing in the statutory language is simply unnecessary to
its interpretation, because the prohibition on the
registration of *all* official insignia resolves the question
of whether *some* official insignia may be registered.  Under
any theory of interpretation, a categorical statement is
not incomplete or unclear merely because it does not
explicitly set out every element or subset of the category,
and the language of Trademark Act § 2(b) is no exception.
There is absolutely nothing in the statute itself which
hints of a different result.

Accordingly, we find that Trademark Act § 2(b) on its
face bars registration of all official insignia, regardless
of the identity of the applicant.

## III. Applicant's Arguments

Notwithstanding what appears to be the clear meaning
of the statutory provision at issue, applicant raises three
points in arguing for reversal of the refusal to register:

(i)    the statutory language should be construed to
allow a city to register its own official seal
to identify municipal services that the city
provides to its citizens under the seal;

(ii)   Applicant is seeking registration for its city
seal for use in connection with services

9

Serial No. 77660948

>           provided by the Applicant, and not as an "emblem
>           of national authority"; and

> (iii) at least thirteen ... other cities have been
>           allowed to register their city seals, with at
>           least one ... of these registrations issuing
>           after Applicant's mark had been rejected.

App. Br. at 3.

##      A.    Origin of Trademark Act § 2(b)

Noting that what is now Trademark Act § 2(b) first

appeared in substantially similar form as § 5 of the

Trademark Act of 1905, applicant hypothesizes that the

provision "was enacted to prevent desecration of the flag,

coat of arms or related symbols by halting the registration

of commercial trademarks that contained representations of

those marks."  App. Br. at 7.  Applicant claims that "[t]he

original statute was <u>not</u> intended to prevent the relevant

states, countries, or municipalities from protecting their

own insignia.  Instead, the purpose was the exact opposite,

to protect the states, countries, or municipalities from

having their insignia misappropriated or used for improper

commercial purposes by private individuals or entities."

App. Br. at 8.

While we are unable to conclusively verify applicant's

theory as to the origin of Trademark Act § 2(b),[9] it makes

---

[9] As authority for its hypothesis, applicant cites a footnote in
a law review article, *Flags and Seals of Texas*, 33 S. Tex. L.

Serial No. 77660948

little difference.  Even if we accept the premise that

Trademark Act § 2(b) was intended to prevent commercial

exploitation of the flag (and other official indicia), it

does not necessarily follow that Congress intended that

governments should be allowed to register their own

official insignia.  Rather – assuming applicant's premise –

it would appear that Congress instead opted to prevent

---

Rev. 215 (1992), which in turn cites a book, Scot M. Guenter, The
American Flag, 1777-1924, 138-39 (1990), for the proposition that
"[t]he 1905 trademark statute was the earliest federal flag-
protection law.  It was enacted to prevent desecration of the
flag, coat of arms, and related symbols by halting the
registration of commercial trademarks that contained
representations of those marks."  33 S. Tex. L. Rev. at 238 n.
73.5; see App. Br. at 7-8.

However, the excerpts from Guenter's book which applicant has
submitted do not entirely support applicant's theory of the
genesis of Trademark Act § 2(b).  Guenter describes the rise of
patriotic fervor in the waning years of the nineteenth century
and the rise of what he refers to as the "cult of the flag,"
fanned by nationalistic movements and the formation of hereditary
societies and other patriotic organizations.  Many members of
such organizations were dismayed by the commercial exploitation
of the U.S. flag, and lobbied for both state and federal laws
against such use.  Nonetheless, while these groups enjoyed some
legislative success at the state level, and some success in
courts and other tribunals, see Dist. of Columbia, slip op. n.
14, Guenter notes that they were rebuffed in their efforts to
have their desired federal legislation passed.  Indeed, in the
excerpt submitted by applicant, Guenter makes no mention at all
of the Trademark Act of 1905 or the provision which ultimately
became Section 2(b) of the current Act.

Thus, while Guenter's "cult of the flag" was quite likely
supportive of the ultimate adoption of § 5 of the Trademark Act
of 1905, applicant's authorities provide no direct support for
the notion that Trademark Act § 2(b) originated as a flag
desecration statute.  We note that the applicant in District of
Columbia presents an alternative history of Section 2(b).  See
id. slip op. at 17-24.  Ultimately, we find it unnecessary to
definitively determine the origins of Trademark Act § 2(b)
because it makes no difference; under either theory we would
reach the same result.

Serial No. 77660948

commercial exploitation of such insignia by a complete ban on registration for any use of such indicia in commerce. That is the plain meaning of the legislation which was enacted.

Trademark law is fundamentally about the use of marks in commerce.  If the motivation behind Section 5 of the Trademark Act of 1905 was indeed concern over commercial exploitation of the flag and other official insignia, it would have been logical to ban all registrations of official insignia, even if the commercial use involved is by the government itself.

While applicant might be of the opinion that Congress employed a larger hammer than necessary to hit that particular nail, we are not in the business of rewriting statutes to more narrowly effect what we suppose might have been Congress' intention.  We must presume, of course, that Congress knew what it was doing when it drafted Section 5 of the Trademark Act of 1905 and later Section 2(b) of the 1946 Act.  *United States v. Goldenberg*, 168 U.S. 95, 102-03 (1897).  And if that statutory language is clear – as we find it to be in this case – there is a "strong presumption that the plain language of the statute[] expresses congressional intent [which] is rebutted only in rare and

12

Serial No. 77660948

exceptional circumstances."[10]   *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008).

In this case, the statutory language at issue clearly indicates that all marks which "[c]onsist[] of or comprise[] the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof" are to be refused registration.  The statute does not provide for any exception to the rule, although one could easily have been written had it been intended to apply.  We accordingly presume that Congress intended the prohibition on registration of official insignia to apply universally, without regard to the identity of the applicant.

**B.   Applicant's Use of its Official Seal**

Applicant emphasizes that it "is not seeking to register its City Seal as an 'emblem of authority.' Instead, it is seeking to register the City Seal in connection with specific municipal services that it provides to its citizens via its various City departments."

---

[10] We note that applicant has cited no discussion in legislative hearings, speeches, committee reports, or the like of this provision in the legislative history of either Section 5 of the 1905 Act or the current Trademark Act § 2(b), and we have not been able to find any.  Whatever may be argued about the role of legislative history in interpreting statutory language, there is nothing in the history of this legislation which clearly suggests an interpretation of Trademark Act § 2(b) contrary to its clear language.

13

App. Br. at 9.  Applicant argues that "insignia which are 'merely used to identify a service or facility of the Government' do not fall within the general prohibitions of the statute."  *Id.* (citing *In re United States Dep't of the Interior*, 142 USPQ 506 (TTAB 1964)).

Applicant seeks registration of its official seal for use in connection with "municipal services, namely, promoting trade, commerce, economic development and tourism; city administrative services, namely, business administration and management of municipality services," in International Class 35; and "municipal services, namely, providing public utilities services," in International Class 39.  The application thus identifies a number of activities in which governments typically engage.[11] However, applicant misreads *Department of the Interior* to the extent it finds support in that case for the contention that the nature of the goods and services identified in the application is a factor in determining whether Trademark Act § 2(b) prohibits registration of official insignia. Neither the statute nor *Department of the Interior* makes such a distinction.

---

[11] The services recited in this case differ in this regard from the goods identified in the application at issue in *District of Columbia.*  In that case, the identified goods appear to be in the nature of commercial merchandise.  *Dist. of Columbia*, slip op. at 2-3.

Serial No. 77660948

*In re U.S. Department of the Interior* involved an application to register the following mark used by the Department in connection with

> (1) Operation and maintenance of recreational and educational facilities in connection with parks, monuments, camp sites, trails, museums and similar institutions, and (2) Making available to the public publications and other informational material in connection with the activities of (1).



Registration was refused under Trademark Act § 2(b). On appeal, "[t]he question for determination ... [was] whether the insignia of the 'National Park Service,' here sought to be registered, falls within the category of 'or other insignia' prohibited by Section 2(b)." *Id.*, 142 USPQ at 507. After analyzing the text of the statute, the Board construed Trademark Act § 2(b) to prohibit registration of

> insignia of the same general class as "the flag or coats of arms" of the United States. Since both the flag and coat or [sic] arms are emblems of national authority it seems evident that other insignia of national authority such as the Great Seal of the United States, the Presidential Seal, and seals of government departments would be equally prohibited registration under Section 2(b).

15

Serial No. 77660948

*Id.*

The Board found that the applied-for mark was not similar in kind to emblems of governmental authority such as the flag or Great Seal of the United States.  The proper analysis thus focuses on the nature of the mark at issue.

Nonetheless, applicant seizes on the final sentence of the case, which directly follows the language quoted above: "On the other hand, it appears equally evident that department insignia which are merely used to identify a service or facility of the Government are not insignia of national authority and that they therefore do not fall within the general prohibitions of this section of the Statute."  *Id.*  Applicant contends that "it is seeking to register the City Seal in connection with specific municipal services that it provides to its citizens.  ... These permitted uses do not fall within the narrowly defined prohibitions of the statute set forth in the case law."  App. Br. at 9.

We do not construe the final sentence in *Department of the Interior* as indicating that the applicability of Trademark Act § 2(b) to official insignia depends on the goods or services recited in the application.  The statute says no such thing, and the panel in *Department of the Interior* did not even hint at any authority or rationale

16

Serial No. 77660948

for such a rule.  Indeed, until this last sentence, the
decision did not in any way discuss the relevance of the
goods or services to the determination of whether
registration is prohibited under Trademark Act § 2(b).  The
decision focused instead on the mark itself and whether it
was akin to "the flag or coat of arms ... of the United
States."

It is thus the nature and status of the applied-for
*mark* that invokes the prohibition of § 2(b).  We understand
the final sentence of *Department of the Interior* to simply
recognize that sometimes resort to consideration of the use
of the applied-for mark by the relevant government entity
may be necessary in determining whether the mark is in fact
"the flag or coat of arms or other insignia" of that
government.  Although *Department of the Interior* makes
clear that the statute prohibits registration of "emblems
of ... authority" on a par with the Great Seal of the
United States, the question of *whether* an applied-for
trademark meets that definition may not always be
determined simply by looking at the mark itself.  Thus if
the evidence demonstrates that the relevant authority *uses*
the applied-for mark as an official insignia, it should be
accorded such status under the Trademark Act.  However, if
the applied-for mark is never used as an emblem of

17

authority, but instead is merely used to identify some
service or program provided by a government agency, the
mark would not fall within the meaning of "other insignia"
and should not be refused under Trademark Act § 2(b).[12]  But
however the conclusion is reached, once it is determined
that the applied-for mark is the official insignia of "the
United States, ... any state or municipality, or of any
foreign nation," its registration is prohibited, regardless
of the specific goods or services for which registration is
sought.

In this case, we are constrained to determine that the
City of Houston's applied-for mark is such an official
insignia, barred from registration under Section 2(b).
Applicant clearly admitted throughout examination and in
its briefs that the subject of its application is the
city's official seal.  *E.g.,* Application (Feb. 1, 2009)
("The mark consists of the official seal of the City of
Houston, Texas."); Req. for Recon. at 2 (June 18, 2010)
("Applicant's mark is the City Seal ... for the City of
Houston, Texas"); App. Br. at 3 ("Applicant is seeking

---

[12] In *Department of the Interior*, the mark was actually used in
connection with the provision of recreational and educational
services in public parks, and not as something akin to an
official seal of the government.  The Board took pains to
emphasize that nothing in Trademark Act § 2(b) should be read as
a general prohibition on the registration of *any* trademarks by
governments.  *Dep't of the Interior*, 142 USPQ at 506-07.

registration for its city seal"). Therefore, in

determining whether the subject application is for a mark

described in Section 2(b), we have no need to examine

applicant's actual use of its seal, or a statute or other

evidence of whether applicant adopted the applied-for mark

as an official "emblem of authority."[13]

Finally, we think it obvious that whether the mark is

an official insignia is not determined (or limited) by the

goods or services for which application is sought. Thus,

the fact that applicant seeks registration for use of its

official seal in connection with certain identified

services is not particularly probative of whether the seal

is, in fact, a "flag or coat of arms or other insignia"

under the statute. Once the status of the mark as an

official insignia is established, it does not matter what

else the mark may be used for, and Trademark Act § 2(b)

cannot be avoided simply by limiting the application to

certain goods or services.[14]  Trademark Act § 2(b) requires

---

[13] We further note that there is no dispute that applicant is a
"municipality," within the meaning of Trademark Act § 2(b).  A
"municipality" is "[a] legally incorporated or duly authorized
association of inhabitants of limited area for local governmental
or other public purposes."  BLACK'S LAW DICTIONARY, 918 (5th ed.
1979), of which we take judicial notice.

[14] A contrary rule would permit precisely the type of harm that
applicant argues Trademark Act § 2(b) was intended to prevent,
namely, commercialization of the government's emblems of
authority.  By way of example, under the statute the Great Seal
of the United States is not registrable as a trademark, even by

refusal of registration when *the mark* "consists of or comprises the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation," regardless of the particular goods or services for which registration is sought.

### C.   Allegedly Inconsistent Registrations

Finally, we consider applicant's argument that registration should be allowed because "at least thirteen ... other cities have been allowed to register their city seals."

Applicant submitted a list of thirteen registrations in support of this argument.  Although we will consider this evidence, it has very little probative value.  As noted, applicant's list consists only of marks and registration numbers.  This evidence is incomplete, at best, as it sets out only the wording in the listed marks, without displaying the owner of the registration, any design elements, disclaimers, or other possibly relevant data.  More importantly, however, there is no evidence in this record that the listed registrations are, in fact, the official seals of the cities mentioned in the marks.

-----

the United States government, and it makes no difference at all whether registration is sought for the services of "managing a national government" or "operation of recreational facilities in parks" or – as in the parallel case – "cuff links, mugs, and sweat pants."

Serial No. 77660948

Except to the extent prohibited by Trademark Act § 2(b),
cities are clearly permitted to apply for and own
trademarks, as are states and national governments. *Dep't
of the Interior*, 142 USPQ at 506 ("the granting of
trademark and service mark registrations to state and
governmental agencies does not appear to be contrary to the
established policy of the Patent [and Trademark] Office").
We cannot presume simply from the fact that the marks
include words such as CITY OF FULLERTON CALIFORNIA, Reg.
No. 2,877,383, or CITY OF MIAMISBURG OHIO'S STAR CITY, Reg.
No. 2,522,124, that the listed marks are in fact the
official emblems of authority of the named cities.

But even if we were to assume that all of the listed
registrations are inconsistent with the examining
attorney's refusal in this case, reversal is not required.
As noted at the outset, the issue we decide today is one of
first impression with the Board.  As applicant recognizes,
App. Br. at 11, it is well-settled that we are not bound by
the decisions of examining attorneys, nor do applicants
have a substantive right to consistency.  *In re Nett
Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed.
Cir. 2001); *see also In re Rodale Inc.*, 80 USPQ2d 1696,
1700 (TTAB 2006) ("Although consistency in examination is a
goal of the Office, the decisions of previous Trademark

21

Serial No. 77660948

Examining Attorneys are not binding on us, and we must

decide each case based on the evidence presented in the

record before us"); *In re Finisair Corp.*, 78 USPQ2d 1618,

1621 (TTAB 2006); *In re Wilson*, 57 USPQ2d 1863 (TTAB 2001)

(administrative law doctrine of "reasoned decisionmaking"

does not require consistent treatment of applications to

register marks; each application for registration must be

considered on its own record and merits).

Nonetheless, applicant attempts to limit this

principle to "issues involving subjective determinations."

> [T]he present case is not one that hinges on a
> subjective determination of, for example,
> likelihood of confusion, where previous decisions
> with different facts may not be directly
> applicable and reliance on the findings of these
> previous decisions would not be warranted.
> Instead, this case deals with the non-subjective,
> straight-forward application of a statute, which
> should be applied uniformly to all applicants.

App. Br. at 11.

We agree, of course, that a legal determination such

as whether Trademark Act § 2(b) applies to applicant's

attempt to register its own official seal should be applied

consistently.  However, our obligation is to make such a

decision correctly, and we may not abdicate that

responsibility to examining attorneys who made

determinations in earlier applications.  To the contrary,

it is the Board which must correct examining attorneys if

22

Serial No. 77660948

they have applied an incorrect legal standard in a case that comes before us.[15]  The third-party registrations noted by applicant here are not at issue, and in any event, there is far too little information on this record to determine anything relevant about their registration.[16]  But as the Court of Appeals for the Federal Circuit noted, "[e]ven if all of the third-party registrations should have been refused registration ..., such errors do not bind the USPTO to improperly register Applicant's marks."  *In re Shinnecock Smoke Shop*, 571 F.2d 1171, 91 USPQ2d 1218, 1221 (Fed. Cir. 2009) (*citing In re Boulevard Entm't*, 334 F.3d 1336, 67 USPQ2d 1475, 1480 (Fed. Cir. 2003)).

## IV. Conclusion

We have carefully considered all of applicant's evidence and arguments in favor of registration. Nonetheless, for the reasons we have discussed, we conclude that Trademark Act § 2(b) prohibits without exception the registration of marks which "[c]onsist[] of or comprise[] the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign

---

[15] Indeed, we expect that a clear decision on this legal issue will promote the goal of consistency.  As noted, we have not heretofore had the occasion to rule on this issue.

[16] Only the mark in the subject application is before us today. Nothing in this decision should be read as an opinion on the registrability of any other mark or the validity of any registration noted by applicant.

Serial No. 77660948

nation." We further conclude that applicant's official seal as depicted in the subject application is such a mark, and that registration is therefore barred by statute.

Applicant argues that Congress did not intend such a result, although it provides no clear indication that Congress intended anything other than what the statute clearly provides. Because we find the language of Trademark Act § 2(b) clear on the question presented, we have neither the authority nor a basis to deviate from its terms. Applicant and others in its position are free, of course, to pursue a legislative solution, but we are without authority to write an exception into the statute.

*Decision:* The refusal to register is AFFIRMED.

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June 2012, a true and correct copy of

the foregoing BRIEF FOR APPELLANT CITY OF HOUSTON was caused to be

served through the Court's ECF system on the following counsel for Appellee:

Ms. Christina J. Hieber
Office of the Solicitor
United States Patent and Trademark Office
Mail Stop 8, PO Box 1450
Alexandria, Virginia  2313-1450


By: __**/s/markgchretien**____

Mark G. Chretien

# CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

☐  The brief contains 3,798 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☐  The brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2003 with 14 point Times New Roman type style.

By:    **/s/markgchretien**
Mark G. Chretien
Attorney for Appellant
City of Houston
June 27, 2012