Appeal No. 2012-1356
(Serial No. 77/660,948)

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

## IN RE CITY OF HOUSTON

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board

**BRIEF FOR APPELLEE - DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE**

RAYMOND T. CHEN
Solicitor

CHRISTINA J. HIEBER
THOMAS L. CASAGRANDE
Associate Solicitors

Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
(571) 272-9035

*Attorneys for the Director
of the United States Patent
and Trademark Office*

October 9, 2012

# TABLE OF CONTENTS

I.   STATEMENT OF THE ISSUE ......................................................................... 1

II.  STATEMENT OF THE CASE ......................................................................... 2

III. STATEMENT OF THE FACTS ........................................................................ 3

   A.  The Examining Attorney's Refusal ............................................................ 3

   B.  The TTAB Affirmed the Refusal to Register ............................................ 4

IV.  SUMMARY OF THE ARGUMENT ............................................................... 6

V.   ARGUMENT ................................................................................................... 8

   A.  Standard of Review ..................................................................................... 9

   B.  The TTAB Properly Concluded that § 2(b) Bars Registration of Houston's
       Mark Because it Consists of or Comprises Houston's Official Insignia ....... 11

       1. Section 2(b) is Unambiguous in its Prohibition of Registration of All
          Governmental Insignia ............................................................................ 12

       2. Houston's Atextual Interpretation is not Supported by the Statute's
          Text, Structure, or History ...................................................................... 16

   C.  Houston's New Argument that the Term "Applicant" Means Something
       Different in § 2(b) Than it Does Elsewhere in the Lanham Act Should be
       Rejected ...................................................................................................... 18

       1. Houston's Argument that "Applicant" in § 2(b) Means Something
          Different than it Means in Other Subsections of § 2 is Without Merit ...... 19

       2. Houston's Policy Arguments Also Fail to Support Houston's Desired
          Exception ................................................................................................. 25

   D.  It has Never Been the Policy of the USPTO to Allow Municipalities to
       Register Official Insignia ........................................................................... 27

VI.  CONCLUSION ............................................................................................. 29

i

# TABLE OF AUTHORITIES

**CASES**                                                **PAGE**

*Andrus v. Glover Const. Co.*,
446 U.S. 608 (1980)......................................................................18

*Atlantic Cleaners & Dyers, Inc. v. United States*,
286 U.S. 427 (1932)................................................................20, 21

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990)........................................................9

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)......................................................................20

*Cahn, Belt, & Co., In re*,
27 App. D.C. 173 (D.C. Cir. 1906)....................................14, 18, 28

*California Innovations, Inc., In re*,
329 F.3d 1334 (Fed. Cir. 2003).....................................................11

*Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984)...........................................................9, 10, 11

*Compagnie Generale Maritime, In re*,
993 F.2d 841 (Fed. Cir. 1993).......................................................10

*Dewsnup v. Timm*,
502 U.S. 410 (1992)......................................................................22

*District of Columbia, In re*,
101 USPQ2d 1588 (TTAB January 18, 2012)...................................9

*Dr. Pepper Co., In re*,
836 F.2d 508 (Fed. Cir. 1987)....................................................9-10

*Eastman Kodak Co. v. Bell & Howell Document Mgmt. Prods. Co.*,
994 F.2d 1569 (Fed. Cir. 1993)......................................................10

*Environmental Defense v. Duke Energy Corp.*,
   549 U.S. 561 (2007)..................................................................20, 22

*Forest Grove School Dist. v. T.A.*,
   557 U.S. 230 (2009)........................................................................15

*Hacot-Colombier, In re*,
   105 F.3d 616 (Fed. Cir. 1997)........................................................10

*Halter v. Nebraska*,
   205 U.S. 34 (1907)..........................................................................15

*Int'l Flavors & Fragrances Inc., In re*,
   183 F.3d 1361 (Fed. Cir. 1999)..................................................10, 11

*ITC Ltd. v. Punchgini, Inc.*,
   482 F.3d 135 (2nd Cir. 2007)..........................................................10

*Kohler Co. v. Moen Inc.*,
   12 F.3d 632 (7th Cir. 1993)............................................................10

*Les Halles De Paris J.V., In re*,
   334 F.3d 1371 (Fed. Cir. 2003)........................................................11

*Nett Designs Inc., In re*,
   236 F.3d 1339 (Fed. Cir. 2001)........................................................29

*Park 'N Fly v. Dollar Park and Fly, Inc., In re*,
   469 U.S. 189 (1985)........................................................................12

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997)..........................................................9

*Rubin v. United States*,
   449 U.S. 424 (1981)........................................................................12

*Save Venice New York, Inc., In re*,
   259 F.3d 1346 (Fed. Cir. 2001)........................................................11

iii

*Shinnecock Smoke Shop, In re,*
   571 F.3d 1171 (Fed. Cir. 2009)................................................12, 28-29

*United States v. Clintwood Elkhorn Mining Co.,*
   553 U.S. 1 (2008)...............................................................12

*United States v. Goldenberg,*
   168 U.S. 95 (1897)..........................................................17-18

*United States v. John Doe, Inc. I,*
   481 U.S. 102 (1987)............................................................25

*United States v. Smith,*
   499 U.S. 160 (1991)............................................................18

*Wada, In re,*
   194 F.3d 1297 (Fed. Cir. 1999)............................................10-11

*Watts, In re,*
   354 F.3d 1362 (Fed. Cir. 2004)..............................................19

*Xianli Zhang v. United States,*
   640 F.3d 1358 (Fed. Cir. 2011)............................................15-16

## STATUTES

15 U.S.C. § 1051................................................................10

15 U.S.C. § 1052................................................................23

15 U.S.C. § 1052(b)......................................................passim

15 U.S.C. § 1052(c)....................................................8, 16-17, 23-24

15 U.S.C. § 1052(d)....................................................8, 16-17, 23-24

15 U.S.C. § 1052(e)........................................................8, 10, 23

15 U.S.C. § 1052(f)............................................................24

iv

15 U.S.C. § 1125(a)..................................................................................26

15 U.S.C. § 1127..........................................................................7, 19-20

## OTHER AUTHORITIES

Black's Law Dictionary, 918 (5th ed. 1979).............................................12

Examination Guide 2-07, *Section 2(b) - Flags and Government Insignia*
  (Nov. 27, 2007)...................................................................................27

Trademark Manual of Examining Procedure § 1204.02..........................3

Trademark Manual of Examining Procedure § 1204.04..........................3

Trademark Manual of Examining Procedure § 1204.04(a)....................27

Trademark Act of 1905, ch. 592, § 5, 33 Stat. 724 (repealed 1946)...............passim

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal from the Trademark Trial and Appeal Board ("TTAB") for the United States Patent and Trademark Office ("USPTO") in connection with this trademark application that has previously been before this or any other court.

The Director is aware of another appeal currently pending before this Court, *In re The Government of the District of Columbia*, Appeal No. 2012-1418, involving trademark Application No. 77/643,857, that involves similar legal issues as the present appeal, and therefore may directly affect or be directly affected by the Court's decision in this appeal.

Appeal No. 2012-1356
(Serial No. 77/660,948)

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

## IN RE CITY OF HOUSTON

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board

**BRIEF FOR APPELLEE - DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE**

## I.   STATEMENT OF THE ISSUE

The City of Houston ("Houston"), seeks to register the mark shown

below, which consists of the official seal of the City of Houston, Texas, for a

variety of municipal services in International Classes 35 and 39.



Section 2(b) of the Trademark Act, 15 U.S.C. § 1052(b) ("§ 2(b)"),

provides, in pertinent part:

> No trademark by which the goods of the applicant may
> be distinguished from the goods of others shall be refused
> registration on the principal register on account of its
> nature unless it—
> . . .
>> (b) Consists of or comprises the flag or coat of arms or
>> other insignia of the United States, or of any State or
>> municipality, or of any foreign nation, or any
>> simulation thereof.[1]

The sole issue on appeal is whether the TTAB correctly concluded

that § 2(b) includes no exception for Houston's registration of its own

official insignia.

## II.   STATEMENT OF THE CASE

On February 1, 2009, Houston filed a use-based trademark application

with the USPTO, identifying the mark sought to be registered as the "official

seal of the City of Houston, Texas" (A27)[2] for a variety of municipal

services in International Classes 35 and 39.  A27-30; A57.

The Examining Attorney refused registration under § 2(b) on the

ground that the applied-for mark consists of official insignia of the City of

---

[1] For ease of reference, the Director will refer generally to the matter §2(b)
prohibits from registration as "official insignia" or "governmental insignia"
throughout this brief.

[2] Citations to the Joint Appendix are referred to as "A__"; citations to the
Appellant's Brief are referred to as "Br. at __."

Houston.  A89-90.  Houston appealed the Examining Attorney's refusal to

the TTAB, which affirmed the refusal in a precedential decision.  A1-24.

Houston now appeals the TTAB's decision to this Court.  A244-45.

## III.  STATEMENT OF THE FACTS

### A. The Examining Attorney's Refusal

The Examining Attorney refused registration under § 2(b) because the

proposed mark is the official insignia of the City of Houston.  A89-90;

A137-40.  The Examining Attorney's finding was based on evidence

including Houston's statement in its trademark application that "[t]he mark

consists of the official seal of the City of Houston, Texas" (A27), as well as

printouts from Houston's official website showing that the proposed mark is

used as the official governmental insignia for Houston. A43-49; A92-99.

The Examining Attorney cited to § 2(b) and the guidance provided in §§

1204.02 and 1204.04 of the Trademark Manual of Examining Procedure

("TMEP"), noting that designs that are insignia under § 2(b) must be refused

registration regardless of the trademark applicant's identity.  A89-90; A137-

139.

In support of registration, Appellant argued that the statute should not

be interpreted to prohibit a municipality from registering its own insignia as

a trademark and also that § 2(b) should not be interpreted to apply to

3

governmental insignia used in connection with municipal services. A102-108. The Examining Attorney considered Appellant's arguments, but found them unpersuasive. A137-40.

### B. The TTAB Affirmed the Refusal to Register

In a precedential decision (A1-24), the TTAB affirmed the refusal under § 2(b), finding the statute "on its face bars registration of all official insignia, regardless of the identity of the applicant." A9. The TTAB found the language of the statute to be "plain and clear on its face" and "uniform in its applicability." A8. The TTAB considered Houston's three arguments urging reversal of the refusal to register, but found them unpersuasive.

First, the TTAB considered Houston's argument that the TTAB should construe the statutory language to permit a city to register its own official insignia to identify municipal services because the statute was "silent" on the matter (A179). A10-13. The TTAB disagreed that the statute was "silent," finding instead that § 2(b)'s categorical "prohibition on the registration of *all* official insignia resolves the question of whether *some* official insignia may be registered." A8-9. The TTAB also rejected Houston's arguments that the TTAB should both consider the history of the statutory language (A179) and construe it in an "updated, broader context, whereby municipalities are understood to be proper applicants within the

meaning of the Trademark Act" (A198). The TTAB noted that where, as here, the statutory language is clear, its plain meaning is presumed to express Congressional intent, absent rare and exceptional circumstances. A11-13. The TTAB further found that even accepting Houston's premise that § 2(b) was intended to prevent commercial exploitation of official insignia, the plain meaning of the statutory language in § 2(b) indicates that Congress "opted to prevent commercial exploitation of such insignia by a complete ban on registration for any use of such indicia in commerce." A11-12.

The TTAB next considered Houston's argument that the nature of its use of the official insignia to identify government-performed services warrants reversal of the refusal under § 2(b). A13-20. The TTAB found no support for Houston's argument, noting that the statute's focus is on the mark itself and whether § 2(b)'s prohibition on registration applies depends on the nature of the mark being an official insignia, not the nature of the applied-for goods or services. A16-19. Given that Houston had admitted that the mark in the application is Houston's official insignia, the TTAB found itself "constrained to determine that the City of Houston's applied-for mark is such an official insignia, barred from registration under Section 2(b)." A18.

Finally, the TTAB considered, but found unpersuasive, Houston's argument that its official insignia should be allowed to register because the USPTO has allegedly acted inconsistently by allowing registration to at least thirteen other city seals. A20. Since Houston had properly submitted only a list of the third-party registrations, the TTAB noted that there was insufficient information about the marks for the TTAB to accurately assess the probative value of the registrations and that the record contained no evidence that the third-party marks were in fact official seals. A20. Further, the TTAB noted that even if it were shown that the allowance of each of the marks in the third-party registrations was inconsistent with the refusal of Houston's mark, reversal of the refusal was not required because (i) the TTAB is not bound by decisions of previous Examining Attorneys, (ii) it is the TTAB's duty to apply the correct legal standard, and (iii) the USPTO is not bound to improperly register Houston's mark even if all of the third-party registrations also should have been refused. A21-23.

Accordingly, the TTAB affirmed the refusal to register Houston's official insignia as barred by § 2(b). A24.

## IV.  SUMMARY OF THE ARGUMENT

The TTAB correctly interpreted § 2(b) as barring registration of any mark that "[c]onsists of or comprises the flag or coat of arms or other

6

insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof." 15 U.S.C. § 1052(b). There is no dispute that Houston is a municipality and that the applied-for mark is Houston's official insignia. As such, the mark falls squarely within § 2(b)'s prohibition of registration of official insignia. Further, as the TTAB properly concluded, the language of § 2(b) is plain and clear on its face and applies universally without exception to bar registration of official insignia, regardless of the identity of the applicant.

In urging reversal of the TTAB's decision, Houston relies on a new argument that the context of § 2(b) requires the meaning of "applicant" as defined in 15 U.S.C. § 1127 to be construed to have a different meaning in § 2(b) than it does in the other parts of the Lanham Act. Specifically, Houston argues that governmental entities seeking to register their own insignia are not "bad actors," and "applicant" should be read to prohibit only bad actors (*i.e.*, non-governmental entities) from registering governmental insignia. Br. at 14-19. This argument fails for several reasons.

Houston's argument that the meaning of "applicant" should be given a different meaning in subsection (b) than it means in the other subsections of § 2 finds no support in rules of statutory construction, which presume that the identical words used in the same section of an act are intended to have

the same meaning. Indeed, the structure of § 2 itself compels rejection of Houston's argument. Section 2 is focused on the nature of the mark, not the nature of the applicant as "good" or "bad," as evidenced by its introductory directive that no *trademark* shall be refused registration "*on account of its nature*" unless prohibited under one of the subsections. 15 U.S.C. § 1052(e) (emphasis added). Significantly, other subsections of § 2, such as (c) and (d), specifically contemplate exceptions to refusals of registration for certain applicants. These provisions demonstrate that Congress is fully capable of expressing its intent to exempt certain applicants from § 2's prohibitions. Because Congress did not include such an exception in § 2(b), none exists, and Houston's argument that an implicit exception should be read into § 2(b) must be rejected.

Because § 2(b) is unambiguous, registration of the mark was properly refused under § 2(b). Accordingly, this Court should affirm the refusal.

## V.   ARGUMENT

As noted in the Statement of Related Cases, an appeal that raises a similar legal issue regarding the construction of § 2(b) is separately before this Court in *In re the Government of the District of Columbia*, Appeal No. 2012-1418. In that appeal, the appellant makes different arguments challenging the TTAB's construction and application of § 2(b) than Houston

8

makes in this appeal. The TTAB separately addressed the arguments made

by Houston and the District of Columbia in separate decisions issued on the

same day, noting in each decision that it was also deciding the other matter.

A2 n.2; *see also In re the Government of the District of Columbia*, 101

USPQ2d 1588 (TTAB January 18, 2012). Because each decision is the

subject of a separate appeal to this Court, the Director will follow his usual

practice of addressing in this brief only the arguments made by Houston in

this appeal. *See Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d

1559, 1566 (Fed. Cir. 1997) (appellant must raise an argument in its main

brief); *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed.

Cir. 1990) ("an issue not raised by an appellant in its opening brief . . . is

waived"). The Director will address the arguments made by the District of

Columbia in the Director's brief in Appeal No. 2012-1418.

### A. Standard of Review

Whether § 2(b) bars registration of official insignia, regardless of the

identity of the applicant, is a question of statutory construction. The Court

reviews questions of statutory interpretation *de novo*, except to the extent

deference to the USPTO's construction is required under the analysis set

forth in *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,

467 U.S. 837 (1984). *See, e.g., In re Dr. Pepper Co.*, 836 F.2d 508, 510

9

(Fed. Cir. 1987) ("While the interpretations of the statute by the [TTAB] are not binding on this court, under general principles of administrative law, deference should be given by a court to the interpretation by the agency charged with its administration.") (citations omitted); *In re Compagnie Generale Maritime*, 993 F.2d 841, 843 n.3 (Fed. Cir. 1993) (concerning construction of § 44(e) and noting that the TTAB's construction is "due great deference under *Chevron* . . . ."); *Eastman Kodak Co. v. Bell & Howell Document Mgmt. Prods. Co.*, 994 F.2d 1569, 1571 (Fed. Cir. 1993) (applying *Chevron* deference to the TTAB's construction of § 2(e)); *In re Hacot-Colombier*, 105 F.3d 616, 618 (Fed. Cir. 1997) (involving interpretation of § 44(d) and agency regulations and stating that "this court defers to the agency's reasonable statutory interpretation.") (citations omitted).[3] *But see* later panel decisions in *In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361 (Fed. Cir. 1999) (stating, without analysis or citation, that this Court reviews "the Board's legal conclusions, such as its interpretation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, *de novo*" ); *In re*

---

[3] Other circuits likewise afford *Chevron* deference to the TTAB's statutory construction. *See, e.g.*, *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 159 (2nd Cir. 2007) (explaining that under general principles of administrative law deference is due to the TTAB's interpretation of the statute the agency is charged with administering); *Kohler Co. v. Moen Inc.*, 12 F.3d 632, 634 (7th Cir. 1993) (affording *Chevron* deference to the TTAB's interpretation of the Lanham Act).

*Wada*, 194 F.3d 1297, 1299 (Fed. Cir. 1999) (citing to *Int'l Flavors*

for standard); *In re California Innovations, Inc.*, 329 F.3d 1334, 1336 (Fed.

Cir. 2003) (citing to *Wada*); *In re Save Venice New York, Inc.*, 259 F.3d

1346, 1351-52 (Fed. Cir. 2001) (citing *Int'l Flavors*); *In re Les Halles De*

*Paris J.V.*, 334 F.3d 1371, 1373 (Fed. Cir. 2003) (citing *Wada*).

Here, the TTAB found the meaning of § 2(b) to be plain and clear on

its face, and thus, the Director asks simply that the Court give effect to

Congress' unambiguously expressed intent in § 2(b) and affirm.  In the event

this Court determines that § 2(b) is ambiguous such that statutory

interpretation is necessary, however, deference to the TTAB's construction

remains appropriate based on the history of this Court in affording deference

to the TTAB's reasonable interpretations of the Lanham Act under *Chevron*,

particularly those sections of the Act, such as § 2, which pertain to the

registrability of marks—the function the USPTO is charged with

administering under the statute.

## B. The TTAB Properly Concluded that § 2(b) Bars Registration of Houston's Mark Because it Consists of or Comprises Houston's Official Insignia

Houston readily admits that the matter it seeks to register as a

trademark is the official seal of the City of Houston, Texas.  A18-19; A27.

Further, there is no dispute that the City of Houston is a "municipality," i.e.,

11

"[a] legally incorporated or duly authorized association of inhabitants of limited area for local governmental or other public purposes." A19 (citing BLACK'S LAW DICTIONARY, 918 (5th ed. 1979)). Therefore, the only question is whether § 2(b)'s prohibition of registration applies universally regardless of the identity of the applicant, or whether it provides any exception for a governmental applicant, such as Houston. In considering this issue of first impression, the TTAB correctly found that the plain language of § 2(b) forecloses any such exception.

### 1.   Section 2(b) is Unambiguous in its Prohibition of Registration of All Governmental Insignia

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985); *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1173 (Fed. Cir. 2009) ("To construe a statute, we begin with its text and look to the words' plain meaning."). If the terms of a statute are clear, there is a "strong presumption that the plain language of the statute expresses congressional intent [which] is rebutted only in rare and exceptional circumstances." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008); *Rubin v. United States*, 449 U.S. 424, 430 (1981) (When the terms of a statute are unambiguous "judicial inquiry is complete,

except in rare and exceptional circumstances.") (internal quotation marks and citations omitted).

Section 2 of the Lanham Act states in relevant part:

> *No trademark* by which the goods of the applicant may be distinguished from the goods of others *shall be refused registration* on the principal register *on account of its nature unless it* . . . (b) *Consists of or comprises* the flag or coat of arms or other *insignia* of the United States, or *of any State or municipality*, or of any foreign nation, or any simulation thereof. . . .

15 U.S.C. § 1052(b) (emphasis added).

Based on this clear language, the TTAB correctly determined that § 2(b) bars Houston from registering its official insignia because "Trademark Act § 2(b) on its face bars registration of all official insignia, regardless of the identity of the applicant." A9. In particular, the statutory language is clear that it is the *nature* of the mark—its status as an official insignia—that invokes § 2(b)'s prohibition on registration. A17; *see also* A18-20 (rejecting Houston's argument that the nature of the services for which registration is sought matters).

In addition, the TTAB properly read the statutory language to be uniform in its applicability. It bars the registration of *all* official insignia and provides no exception for any official insignia to be registered under particular circumstances. A8-9.

13

Nothing on the face of the statute hints at an exception for anyone to obtain registration of an official insignia for any purpose. Moreover, the TTAB noted the dearth of any legislative history concerning the enactment of § 2(b) or its predecessor provision in the Trademark Act of 1905, on which current § 2(b) is based and which employed virtually identical language to that used by Congress in § 2(b). A13.

The relevant portion of Section 5 of the Trademark Act of 1905 reads as follows:

> [N]o mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark
> ...
> Consists of or comprises the flag or coat of arms or other insignia of the United States or any simulation thereof, or of any State or municipality or of any foreign nation....

Trademark Act of 1905, ch. 592 § 5, 33 Stat. 724 (repealed 1946).

Although there is no legislative history providing Congress' reasoning for its choice of language in § 5 of the 1905 Act, a decision by the Court of Appeals of the District of Columbia in 1906 provides insight into Congress' probable reasoning: consistent with the internationally-accepted policy embodied in the Paris Convention of 1883, it is contrary to public order to permit registration of official insignia for commercial purposes. *In re Cahn, Belt, & Co.*, 27 App. D.C. 173, 179-80 (D.C. Cir. 1906) ("Congress has

14

determined, by the very section of the act we are now considering, to enforce a wise public policy by prohibiting the registration of the coat of arms of a State as a trademark."). In other words, registering official insignia for commercial purposes cheapens the insignia. *Cf. Halter v. Nebraska*, 205 U.S. 34, 42 (1907) (upholding constitutionality of a Nebraska state law prohibiting use of representations of the U.S. flag for advertising merchandise and noting that "[b]y the statute in question, the state has in substance declared that no one subject to its jurisdiction shall use the flag for purposes of trade and traffic—a purpose wholly foreign to that for which it was provided by the nation. Such a use tends to degrade and cheapen the flag in the estimation of the people . . . .").

When it enacted the Lanham Act in 1946, Congress carried forward the language from § 5 of the 1905 Act in § 2(b) with no significant change. *See, e.g., Forest Grove School Dist. v. T.A.*, 557 U.S. 230, 239-40 (2009) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.") (citation omitted).

Accordingly, the TTAB properly followed the clear and express language Congress used in the statute in refusing registration to Houston's official insignia. A8-9; *see, e.g., Xianli Zhang v. United States*, 640 F.3d

15

1358, 1364 (Fed. Cir. 2011) ("If the statute is clear and unambiguous, then the plain meaning of the statute is conclusive, and we give effect to the unambiguously expressed intent of Congress.") (citations and quotation marks omitted). The TTAB correctly concluded that § 2(b)'s plain meaning bars the registration of all official insignia, regardless of the applicant's identity.

### 2.    Houston's Atextual Interpretation is not Supported by the Statute's Text, Structure, or History

Houston has acknowledged that § 2(b) "does not list, on its face, an express exception that would allow a municipality to register its own government insignia" (A198), yet it argues that the Court should interpret § 2(b) to allow for such an exception. As the TTAB noted in rejecting this argument, if Congress intended an exception for governmental applicants, it could have easily written an exception in § 2(b) (A13), just as it did in § 2(b)'s neighboring subsections (c) and (d). For example, Congress included an exception in § 2(c) for an individual to register his or her own name, portrait, or signature or for others to do so on consent of the living individual or a deceased president's widow; § 2(c) otherwise prohibits registration of

16

such marks. 15 U.S.C. § 1052(c).[4]  Similarly, § 2(d)'s prohibition on registration of marks which would be likely to cause confusion with prior marks extends only to those prior marks registered or used "by another." 15 U.S.C. § 1052(d).[5]  Congress thus permitted an exception for an applicant to register a mark that is confusingly similar to its own previously registered marks. *Id.*

But Congress wrote no such exception into § 2(b).  Instead, it chose to retain the 1905 Act's total prohibition of registration of official insignia when it enacted the Lanham Act in 1946.  Congress has amended the Lanham Act on several occasions, but it has not amended § 2(b)'s language.

Creating any such exception to § 2(b)'s prohibition on registration of official insignia would be improper because neither the TTAB nor this Court has the authority to deviate from § 2(b)'s plain terms.  *United States v.*

---

[4] Section 2(c) prohibits registration of a mark that "[c]onsists of or comprises a name, portrait, or signature identifying a particular living individual *except by his written consent*, or the name, signature, or portrait of a deceased President of the United States during the life of his widow, if any, *except by the written consent of the widow*." 15 U.S.C. § 1052(c) (emphasis added).

[5] Section 2(d) prohibits registration of a mark that "[c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States *by another* and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive: . . . ." 15 U.S.C. § 1052(d) (emphasis added).

17

*Goldenberg*, 168 U.S. 95, 103 (1897) ("The courts have no function of legislation, and simply seek to ascertain the will of the legislator. . . . No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute.").[6] Since there is no clear indication that Congress intended anything other than what the statute plainly provides on its face, and since Congress did not specify an exception for governmental applicants in § 2(b), no such exception may be implied. *See United States v. Smith*, 499 U.S. 160, 166-67 (1991); *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616-17 (1980).

## C. Houston's New Argument that the Term "Applicant" Means Something Different in § 2(b) Than it Does Elsewhere in the Lanham Act Should be Rejected

On appeal, Houston argues that because a given term can have different meanings in the same statute, in its view, the TTAB erred by failing to construe the term "applicant" in § 2(b) to refer to only "bad actor" applicants and not "good" applicants such as Houston. Br. at 10-11 and Br.

---

[6] Inserting a judicially-created exception into the statute also, as the TTAB observed, "would permit precisely the type of harm that [Houston] argues § 2(b) was intended to prevent, namely, commercialization of the government's emblems of authority." A19 n.14; *see also Cahn*, 27 App. D.C. at 179-80 (reasoning that Congress enacted § 5 of the 1905 Trademark Act in recognition that it is against public policy to register governmental seals for commercial purposes).

at 16 ("The government entity 'applicant' of § 2(b) seeking to register its own Insignia is the only 'applicant' under § 2 that does not fall within this group of 'bad actors'."). Since Houston never presented this argument to the TTAB to consider in the first instance,[7] the TTAB could not have erred by failing to consider it. And since the Court has no reasoning or analysis from the TTAB to review, it should not consider the argument for the first time on appeal. *See In re Watts*, 354 F.3d 1362, 1367 (Fed. Cir. 2004) ("[I]t is important that the applicant challenging a decision not be permitted to raise arguments on appeal that were not presented to the Board."). But even if the Court were to consider this new argument, it fails on the merits.

### 1. Houston's Argument that "Applicant" in § 2(b) Means Something Different than it Means in Other Subsections of § 2 is Without Merit

Houston points to the introductory clause of section 45 of the Trademark Act, 15 U.S.C. § 1127, for the proposition that the term

---

[7] Houston argued in its reply brief to the TTAB that the statute should not be construed to bar a government agency from registering its own insignia because the passage of time since the enactment of the provision in the Trademark Act of 1905 warranted construing the statute in an "updated, broader context, whereby municipalities are understood to be proper applicants within the meaning of the Trademark Act." A198. This hardly is the same as Houston's argument in its blue brief that the term "applicant" should be construed to have a different meaning in § 2(b) than it has in any other part of the Lanham Act.

"applicant" can be interpreted differently in the Trademark Act if "plainly apparent from the context." Br. at 11 (quoting preamble of § 45: "In the construction of this chapter, unless the contrary is plainly apparent from the context— . . . .").[8]

As an initial matter, the Director has no quarrel with Houston's general proposition that courts are not *required* to interpret the same term the same way for all purposes in a given statute. *See* Br. at 16-17. But as § 45's introductory clause and even two of the very decisions cited by Houston make clear, courts should start with a presumption that the same term used in different parts of the same statute has the same meaning. *See, e.g.*, *Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007); *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932); *see also Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 230 (1993) (adhering to "the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning"). Departure from that principle is

---

[8] The definition of "applicant" Houston points to does not help Houston because it makes clear that all applicants, including juristic persons and government entities, are encompassed by the definition and are to be treated alike under the Act. 15 U.S.C. § 1127.

20

appropriate only when the surrounding language leads clearly to the
conclusion that the same words should not be given the same construction.

For example, in *Atlantic Cleaners*, a D.C.-based wholesale clothes
cleaner who dealt with D.C.-based retail cleaners was accused of violating
section 3 of the Sherman Act. *See* 286 U.S. at 432. The language "in
restraint of trade or commerce" appeared in both sections 1 and 3 of the
Sherman Act: in section 1, that phrase was followed by "among the several
States, or with foreign nations"; but in section 3, it was followed by "in any
Territory of the United States or of the District of Columbia." The
defendant argued that the term "trade or commerce" should be given the
same definition in both sections and, since (i) Congress was limited to
legislating over "commerce" as set forth in the Commerce Clause, and
(ii) since its services did not qualify as "commerce" under that Clause, its
activities fell outside the purview of section 3 of the Sherman Act. *See id.*
The Supreme Court, however, disagreed. The Court noted that, in the
context of the words that followed each usage of the phrase "in restraint of
trade or commerce," it became clear that while Congress passed section 1
"under the specific [Constitutional] power to regulate commerce" (both
interstate and foreign), section 3 was passed under Congress' "plenary
[Constitutional] power to legislate for the District of Columbia." *See id.* at

21

434-35.  Thus, in the context of the surrounding statutory text, it was clear

that the phrase "in restraint of trade or commerce" did not mean the same

thing in both sections.  *See id.* at 434-35.  In contrast, Houston points to no

Constitutional basis or textual support for its novel "good actor/bad actor"

classification system for departing from the clear language of § 2(b).[9]

In *Dewsnup v. Timm*, 502 U.S. 410 (1992), reading the same statutory

phrase in two nearby provisions of the Bankruptcy Code the same way

would have resulted in a significant departure from well-established, pre-

Bankruptcy Code practice by significantly impairing creditors' property

liens.  *See id.* at 416-17.  Without any textual indication or legislative history

that Congress intended such a change, the Court—though not without some

reservation, *see id.* at 417—held that the phrases did not mean the same

thing in the two provisions.  In contrast, Houston points neither to any

established pre-Lanham Act practice of registering official municipal seals

---

[9] The reasoning in *Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561 (2007) is similar.  In that case, the Supreme Court held that the Fourth Circuit's ruling that EPA had to interpret identical wording in two related statutory provisions the same in the regulations it promulgated under each was erroneous because "the reasons invoked by the Court of Appeals" were "no match" for the "textual differences" in the statutory language surrounding these two identical phrases.  *See id.* at 577-78.  In contrast, Houston points to no such textual (or contextual) differences in § 2.

as trademarks, nor to any intent on Congress' part to create, in § 2(b), a means to punish so-called "bad actors."

Moreover, Houston's novel "good actor/bad actor" classification scheme of the various subsections of § 2 is inherently flawed. Houston omits reference to other statutory disqualifications in § 2 that have nothing to do with an applicant being a "good actor" or "bad actor." Instead, they focus on the nature of the mark sought to be registered, as evidenced by § 2's introductory directive that no *trademark* shall be refused registration "*on account of its nature*" unless prohibited under one of the subsections. 15 U.S.C. § 1052 (emphasis added). For example, § 2(e)(4) prohibits registrations of surnames, yet attempting to register one's own name as a trademark can in no way be characterized as a bad act. Section 2(e)(5) prohibits registration of functional matter, but, again, this has nothing to do with culpable behavior. And there is nothing inherently unethical in attempting to register a mark ultimately determined to be descriptive or primarily geographically descriptive, yet that is what sections 2(e)(1) & (2) prohibit.

Further, that subsections (c) and (d), which immediately follow § 2(b), both include explicit exceptions of the type Houston seeks here further undermines Houston's attempt to create one for § 2(b). As noted earlier,

23

Congress included an exception in § 2(c) for individuals to register *their own name, portrait, or signature* or for others to do so on consent of the living individual or a deceased president's widow. 15 U.S.C. § 1052(c). Similarly, Congress extended § 2(d)'s prohibition on registration of marks which would be likely to cause confusion with prior marks only to those prior marks registered or used "by another," thus permitting an applicant to register a mark that is confusingly similar to its own previously registered marks. 15 U.S.C. § 1052(d). In addition, § 2(f) provides that certain marks that otherwise would be barred from being registered under § 2 may be registered upon a showing of acquired distinctiveness "[e]xcept as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of [section 2]." 15 U.S.C. § 1052(f).[10]

These provisions demonstrate that Congress is fully capable of expressing its intent to create exceptions, based on the nature of the user or use of the mark, to § 2's prohibitions against registration of certain kinds of marks. Houston's argument that this Court should create an exception to § 2(b) must be rejected.

---

[10] Section 2(f) provides: "Except as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. . . ."

Finally, contrary to Houston's contention (Br. at 16), the structure of § 2 is not complex. It straightforwardly states that trademarks should not be refused on account of their nature unless they fall into one of the enumerated categories, some of which—but notably not § 2(b)—contain explicit exceptions permitting registration of some marks by certain applicants.

## 2. Houston's Policy Arguments Also Fail to Support Houston's Desired Exception

Houston contends that there "is no overriding policy reason" for not permitting an exception for governmental applicants in § 2(b) (Br. at 13). According to Houston, the TTAB's interpretation of § 2(b) as an absolute bar to registration of official insignia "only serves the interests of 'bad actors' who want to confuse and harm unknowing citizens" (Br. at 13), and runs counter to the intent and purposes of the Lanham Act (Br. at 18).

Houston's arguments are quintessential policy arguments to be made to Congress and do not justify construing § 2(b) in a manner contrary to its plain language. For the question is not whether there is good enough policy to justify enforcing the provision as Congress wrote it. The question is whether the intent of Congress in enacting § 2(b) is so plainly at odds with the language it chose that courts should ignore that language. *See, e.g.,* *United States v. John Doe, Inc. I*, 481 U.S. 102, 109-10 (1987) ("As for the policy arguments, it suffices to say that, as the Court of Appeals recognized,

25

the implications of our construction are not so absurd or contrary to Congress' aims as to call into question our construction of the plain meaning of the term . . . .").

Houston's supposed policy reasons to override the plain meaning of § 2(b) and make an exception to the uniform prohibition of registration of governmental insignia fall far short of that standard. Houston fails to offer any justification why in 1905 and again in 1946 Congress could not logically choose to give effect to a policy of prohibiting registration of official insignia for commercial purposes by a complete ban on the registration of all official insignia, even by a government itself. *See* A12. At bottom, Houston's argument is not that the plain language is so at odds with the supposed underlying policy as to be absurd, but is a plea that the words Congress chose are a bit too broad compared to the words Houston would have preferred. Ultimately, if Houston wants a federal registration as a tool in its arsenal to combat "bad actors" who misuse its insignia, Houston needs a change to the language of § 2(b) that only Congress can provide.[11]

---

[11] To the extent Houston suggests that it cannot effectively combat "bad actors" without a federal registration for its insignia, Houston is mistaken. Houston has other tools available, including the Lanham Act's unfair competition provision—section 43(a), 15 U.S.C. § 1125(a). As a municipality, Houston presumably could pass an ordinance prohibiting unauthorized use of its official insignia. And Houston also may have remedies under Texas State law.

26

## D. It has Never Been the Policy of the USPTO to Allow Municipalities to Register Official Insignia

Houston contends that "the ongoing policy of the USPTO" has been to permit municipalities to register their official insignia. Br. at 13-14. The ongoing policy of the USPTO, however, has been and continues to be the exact opposite.

Section 1204.04(a) of the TMEP sets forth the Office's current policy guidance on § 2(b). Consistent with the TTAB's construction of § 2(b) here, the Office has for several years explicitly instructed that § 2(b) is an "[a]bsolute bar to registration . . . . The statute does not list any exceptions that would allow for countries, states, or municipalities to register their own flags or insignia. Applications for marks that contain flags, coats of arms, or government insignia, *even if filed by the relevant state, country, or municipality*, must be refused." TMEP § 1204.04(a) (6th ed. 2009, 7th ed. 2010, 8th ed. 2011), incorporating the language set forth in Examination Guide 2-07, *Section 2(b) – Flags and Government Insignia*, p. 5 (Nov. 27, 2007) (emphasis added).[12]

---

[12] The TMEP and Examination Guides that have not yet been incorporated into the TMEP are publicly available on the USPTO's website at www.uspto.gov/trademarks/resources/index.jsp.

In fact, it appears that the Office has applied such a policy for well over a century. Case law from 1906 suggests that the policy prohibiting registration to official insignia had been "steadily" applied by the Office since prior to the enactment of the Trademark Act of 1905. *See Cahn*, 27 App. D.C. at 179-80 (noting "[t]he Commissioners of Patents in recent years have steadily held that the registration of the coat of arms of the United States or of any State should be refused as being against public policy").

A contrary USPTO policy does not exist just because Houston can point to some third-party registrations for marks allegedly comprised of official insignia of municipalities. As the TTAB noted in rejecting Houston's argument, the only evidence properly in the record is a mere listing of the registrations and there is no evidence that any of the marks in those registrations are actually official insignia. Moreover, as the TTAB explained, even if it were shown that the marks in the third-party registrations were official insignia, reversal of the refusal of Houston's mark is not required because (i) it is the TTAB's duty to apply the correct legal standard, (ii) this case presents an issue of first impression, (iii) the TTAB is not bound by decisions of previous Examining Attorneys, and (iv) this Court has held that the USPTO is not bound to improperly register a mark even if registration should have been refused to prior marks. A21-23, *Shinnecock*,

28

571 F. 3d at 1174 and *In re Nett Designs Inc.*, 236 F. 3d 1339, 1342 (Fed. Cir. 2001).

## VI. CONCLUSION

Because the TTAB's construction of § 2(b) is correct and compelled by the unambiguous language of the statute, the TTAB's decision to refuse registration under § 2(b) should be affirmed.

Respectfully submitted,

/s/Christina J. Hieber

Raymond T. Chen
Solicitor

Christina J. Hieber
Thomas L. Casagrande
Associate Solicitors

Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450

*Attorneys for the Director of the United States Patent and Trademark Office*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2012, I electronically filed the

foregoing BRIEF FOR APPELLEE - DIRECTOR OF THE UNITED

STATES PATENT AND TRADEMARK OFFICE with the Court's

CM/ECF filing system, which constitutes service, pursuant to Fed. R. App.

P. 25(c)(2), Fed. Cir. R. 25(a), and the Court's Administrative Order

Regarding Electronic Case Filing 6(A) (May 17, 2012).  Counsel for the

Appellant was electronically served via e-mail.


/s/Macia L. Fletcher
MACIA L. FLETCHER
Associate Solicitor
USPTO
Office of the Solicitor
P.O. Box 1450 – Mail Stop 8
Alexandria, Virginia 22314-1450
(571) 272-9035