2012-1356
(Serial No. 77/660,948)

# In the United States Court of Appeals for the Federal Circuit

IN RE CITY OF HOUSTON

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board.

**REPLY BRIEF FOR APPELLANT
CITY OF HOUSTON**

Mark G. Chretien
Ben D. Tobor
Anthony F. Matheny
GREENBERG TAURIG, LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3528
Facsimile: (713) 754-7528
Attorneys for Appellant
City of Houston

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iii

I.　INTRODUCTION ..................................................................................1

II.　ARGUMENT ..........................................................................................2

    A.　The "Text and Plain Meaning" of § 2(b) Must Be Examined in the Context of § 45 ...................................................................2

        1.　Section 29 (Predecessor to § 45) ................................................3

        2.　Section 45 (Lanham Act) ............................................................6

    B.　The City of Houston's Prohibition Against "Bad Actors" is Supported by the Legislative History of the Lanham Act ...................7

    C.　The Director's Proposed Construction of § 2(b) Produces "Absurd" Results .........................................................................9

    D.　The City of Houston's Arguments Regarding Construction of the Term "Applicant" in §2 (b) should be Considered by this Court ...................................................................................11

III.　CONCLUSION ....................................................................................13

CERTIFICATE OF SERVICE ........................................................................14

# TABLE OF AUTHORITIES

**Federal Cases**

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) .................................................. 10

*Golden Bridge Technology, Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ................................................................... 11-12

*Green v. Bock Laundry Machine Co.*, 490 U.S. 504 (1989) .............................. 10-11

*Harrison v. PPG Industries, Inc.*, 446 U.S. 578 (1980) ........................................... 11

*In re U.S. Department of the Interior*,
142 U.S.P.Q. 506 (T.T.A.B. 1964) ..................................................................... 4

*In re Watts*, 354 F.3d 1362 (Fed. Cir. 2004) .......................................................... 11

*Lebron v. Nat'l Railroad Passenger Corp.*, 513 U.S. 374 (1995) ........................... 12

*Preferred Risk Mutual Insurance Co. v. United States*,
86 F.3d 789 (8th Cir.1996) ................................................................................ 4

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
 529 U.S. 765 (2000) .......................................................................................... 4

*Yee v. Escondido*, 503 U.S. 519 (1992) ................................................................. 12

**Federal Statutes**

15 U.S.C. § 1052(b) ........................................................................................ passim

15 U.S.C. § 1052(c) ................................................................................................. 7

15 U.S.C. § 1052(e) ................................................................................................. 7

15 U.S.C. § 1127 ............................................................................................. passim

**Other Authorities**

Act of February 20, 1905 - § 5 (33 Stat. 725 (1905)) ................................. 5, 6, 7

Act of February 20, 1905 - § 29 (33 Stat. 725 (1905)) ................................ 3, 4, 7

H.R. Rpt. 79-219 (February 26, 1945) ........................................................ 8

I.  **INTRODUCTION**

The City of Houston files this Reply Brief to the Brief for Appellee filed by the Director of the United States Patent and Trademark Office (the "Director") on October 9, 2012.[1]

The Director has asked this Court to construe 15 U.S.C. § 1052(b) of the Lanham Act (hereinafter "§ 2(b)") as barring registration of official insignia, regardless of the identity of the applicant. (Dir. Br. at 7). However, the City of Houston submits that the Director's proposed construction of § 2(b) is flawed. First, the Director's proposed construction does not take into account the historical relationship between § 2(b) and 15 U.S.C. § 1127 (hereinafter "§ 45"), including the Congressional amendments to § 45. Second, the Director's proposed construction produces an absurd result because the proposed construction prevents a government entity mark owner from registering its own mark, despite the absence of any legislative history promoting or supporting this unusual result. Third, the Director's proposed construction has a limiting effect on the rights of an "applicant" under § 2(b), as opposed to the enlarging effect that the amendments to § 45 had on an "applicant's" rights in nearly all of the other provisions of the

---

[1] Citations to the Director's Brief are referred to as "Dir. Br. at __." Citations to the City of Houston's Opening Brief are referred to as "Hou. Br. at __."

1

Lanham Act. Finally, the Director's proposed construction is plainly at odds with the basic purposes of the Lanham Act set forth by the original sponsor of the Act.

Therefore, the City of Houston respectfully requests that the Court reject the Director's proposed construction of § 2(b), that the decision of the Trademark Trial and Appeal Board be reversed, and that the City of Houston's application be remanded to the USPTO with instructions to allow registration of the City of Houston's mark.

## II. ARGUMENT

### A. The "Text and Plain Meaning" of § 2(b) Must Be Examined in the Context of § 45

The Director has urged this Court to interpret § 2(b) based on its "text and … plain meaning." (Dir. Br. at 12). In emphasizing this approach, the Director stresses that "Congress has amended the Lanham Act on several occasions, but has not amended § 2(b)'s language." (Dir. Br. at 17). Although the City of Houston agrees that the "text and … plain meaning" of § 2(b) must be examined, such examination must be done within the proper context. That is, to fully understand § 2(b), it must be read together with § 45 which defines key terms from § 2(b), most notably the term "applicant." (Hou. Br. at 10). In addition, the history of Congressional amendments to § 45 also informs one how § 2(b) should be examined and construed. Thus, in order to understand the "text and … plain

2

meaning" of § 2(b)'s un-amended language, as urged by the Director, it is critical to also understand § 45 and its statutory history.

### 1. Section 29 (Predecessor to § 45)

Section 29 from the 1905 Trademark Act (hereinafter "§ 29") was the predecessor to § 45. *See* 33 Stat. 725 (1905). A comparison of the relevant language from § 29 and § 45 is shown below:

| Section 29 (1905) | Section 45 (2012) |
|---|---|
| "In the construction of this Act, unless the contrary is plainly apparent from the context … [t]he terms 'person' and 'owner,' and any other word or term used to designate the applicant or other entitled to a benefit or privilege or rendered liable under the provisions of this Act include a firm, corporation, or association as well as a natural person." | "In the construction of this Act, unless the contrary is plainly apparent from the context … [t]he term 'person' and any other word or term used to designate the applicant or other entitled to a benefit or privilege or rendered liable under the provisions of this Act includes a juristic person as well as a natural person. The term 'juristic person' includes a firm, corporation, union, association or other organization capable of suing and being sued in a court of law." |

The important difference between § 29 and § 45 is that the former § 29 did not include any reference to government entities. Instead, § 29 only referenced private, non-government entities, in particular, a "firm, corporation or association" or a "natural person," as "persons" or "applicants." It was not until 1946, when §

3

45 of the Lanham Act was amended, that the phrases "juristic person" and "organization capable of suing and being sued in a court of law" were included in the statute. Only thereafter did the TTAB hold that governmental entities fall within the scope of the newly added language "organizations capable of suing and being sued in a court of law" for purposes of interpreting § 45. *See In re U.S. Department of the Interior*, 142 U.S.P.Q. 506, 507 (T.T.A.B. 1964) (indicating that the U.S. Government was an "organization capable of suing or being sued (albeit with its consent) in a court of law"); *Cf. Preferred Risk Mutual Insurance Co. v. United States*, 86 F.3d 789, 794 (8th Cir.1996) (referring to the phrase "firm, corporation, union, association …" in § 45 as "a list of private entities").

In keeping with the Director's charge to consider the "text and … plain meaning" of the statute, the City of Houston respectfully submits that the text and plain meaning of § 29 did not include government entities within the scope of "person," "owner," or "applicant." This reading of § 29 is consistent with the "longstanding interpretative presumption" that a government entity is only treated as a "person" under a statute if the statute expressly demands so. *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000).

If the "text and … plain meaning" of §29 did not include government entities within the scope of "persons" or "applicants," then consequently, section 5 of the 1905 Trademark Act (hereinafter "§ 5"), which is the predecessor statute to

§ 2(b), could not have prohibited government entities from registering their own insignia, as § 5 would only have applied to private entities. On this basis, the present case is distinguishable from the pre-Lanham Act cases cited by the Director that refer to the "cheapening" of insignia or acting "contrary to public order" by attempting to register these insignia (*see* Dir. Br. at 14-15). None of these pre-Lanham Act cases were directed to government entity applicants like the City of Houston because such applicants would have fallen outside the scope of § 5. Indeed, all of these cases cited by the Director involved private entity applicants. Thus, the cited cases are all inapplicable to the issue pending before this Court.

The Director also emphasized that "Congress … has not amended § 2(b)'s language." (Dir. Br. at 17). The City of Houston agrees that § 2(b) has not been amended, but points out that if § 2(b) has not been amended, and the plain language of original § 2(b), former § 5, did not prohibit government entities from registering their own insignia, then the plain language of current § 2(b) must also be interpreted in a similar fashion, namely, as not prohibiting government entities from registering their insignia. This interpretation would carry over the intent of the drafters of original § 2(b) into the present day, un-amended statute.

## 2.    Section 45 (Lanham Act)

The fact that § 45 of the Lanham Act now includes "juristic persons" in the category of "persons" does not change how § 2(b) should be construed. As pointed out above, the addition of "juristic persons" to the definition of "persons" under § 45 has the effect, in other sections of the Lanham Act, of broadening and enlarging the rights of the trademark owner, by increasing the pool of "persons" who can either apply for trademark protection, or against whom mark owners can enforce their marks. But it does not have this same effect on § 2(b). Instead, the Director's proposed construction of the "text and … plain meaning" of 2(b) has the opposite effect. It instead restricts and limits the rights of the government mark owner in the context of § 2(b) by preventing the mark owner from registering its own insignia. There is no legislative history to suggest that Congress intended this "absurd" result, and thus, this is not how § 2(b) should be interpreted and applied.

As pointed out above, § 45 mandates that the Lanham Act be construed so the term "person" refers to an "applicant or other … entitled to a benefit or privilege or rendered liable" under the Act. But what "benefit or privilege" does a government entity mark owner receive under § 2(b) under the Director's proposed construction? There is none. Instead, the Director's interpretation prevents a government entity from registering its own insignia, so there is no "benefit." Also, how is a government entity mark owner "rendered liable" to any other party under

§ 2(b)? It simply is not. Instead, it is merely seeking to register its own insignia and gain the protections afforded therewith.

In attempting to broaden the scope of § 45, Congress created the absurd result of narrowing in § 2(b) the rights of one particular entity – the government entity applicant attempting to register its own insignia. There is no evidence to suggest that this was Congress' goal, and the present case provides this Court with an opportunity to fix this unintended result.

Accordingly, when § 2(b) is read in the context of § 45 and its statutory history, the City of Houston respectfully submits that § 2(b) should not be interpreted to prohibit government applicants from registering their own insignia.[2]

### B. The City of Houston's Prohibition Against "Bad Actors" is Supported by the Legislative History of the Lanham Act

The Director argues that the City of Houston cannot point to any Congressional intent to create a statutory means to punish "bad actor" trademark users via § 2(b). (Dir. Br. at 22-33). The City of Houston respectfully disagrees.

---

[2] The Director posits the question as to why § 2(b) does not include an "express exception" similar to the "exceptions" in 15 U.S.C. § 1052(c) and 15 U.S.C. § 1052(e). (Dir. Br. at 16-17). The answer can be found in the original language of § 5 and § 29. An "express exception" for government entities was not needed in § 5 because § 29 did not include government entities as possible applicants. At the time § 29 was amended to become § 45, and § 5 was left virtually unchanged to become § 2(b), it is likely that an unintended consequence that the previously unnecessary "express exception" for § 2(b) was lost in the "web of a complex statutory framework." (Hou. Br. at 16).

7

The legislative history of the Lanham Act addresses the issue of "bad actors" and the like, in the context of the policy reasons underlying the statute. In particular, in 1945, U.S. Representative Fritz G. Lanham of Texas, in his committee report to Congress on the legislation that eventually became the Lanham Act, declared as follows:

> Basic Purposes of Trademark Legislation: The purpose underlying any trademark statute is twofold. One is to protect the public so it may be confident that, in purchasing a product bearing a particular trademark which it favorably knows, it will get the product which it asks for and wants to get. Secondly, where the owner of a trademark has spent energy, time and money in presenting to the public the product, he is protected in his investment from its misappropriation by pirates and cheats. This is the well established rule of law protecting both the public and the trademark owner.

H.R. Rpt. 79-219 at p. 2 (February 26, 1945). Thus, the stated purpose of the Lanham Act, since its origin, has been to protect both the public and the trademark owner from "pirates and cheats," that is, bad actors.

In view of this legislative history, the question becomes: would the public and government entity trademark owner be protected if the government entity is prevented from federally registering its own insignia? The indisputable answer is "no, they would not." To the contrary, the government entity would not be able to rely on a federal registration to prevent bad actors from misappropriating its marks, which would open the door to unscrupulous individuals and companies to cause confusion and harm to the public.

On the other hand, if the Lanham Act is interpreted as requested by the City of Houston, then not only would government entity trademark owners be able to protect their own insignias, but an additional line of defense would be provided between the public and the "bad actors" seeking to use confusingly similar insignias to advance their own interests at the expense of the public. Indeed, a government entity would be able to stop individuals and companies that try to create an incorrect perception that the government entity approves of the bad actors' actions. Further, the City of Houston cannot see how anyone would be harmed by allowing a government entity to federally register its own insignia. This is not surprising, because allowing such registration could be in direct alignment with the "basic purposes of trademark legislation" as set out the legislative history discussed above.

C.   **The Director's Construction of § 2(b) Produces "Absurd" Results**

The Director argues that "[the City of] Houston's argument is not that the plain language is so at odds with the supposed underlying policy as to be absurd, but is a plea that the words Congress chose are a bit too broad compared to the words [the City of] Houston would have preferred." (Dir. Br. At 26). The Director is mistaken as to the City of Houston's positions. The City of Houston, in fact, does believe that the Director's proposed construction of the "plain language" of §

9

2(b) produces "absurd" results, and is "plainly at odds" with Congressional objectives for the statute. (Hou. Br. at 12-14).

For example, as discussed previously, the Director's proposed construction prevents a government entity mark owner from registering its own insignia mark. The Director's construction also limits the rights of an "applicant" under § 2(b), as opposed to the enlarging effect that the amendments to § 45 have on an "applicant's" rights in the rest of the statute. Finally, the Director's proposed construction is at odds with the basic goals of the Lanham Act of protecting both the public and the trademark owner from "pirates and cheats."

There is no indication in the legislative history of the Lanham Act that any of these "absurd" results were intended by Congress with respect to §2(b). Indeed, one would expect some mention or discussion in the legislative record of a statutory change that, upon implementation, would prevent a mark owner from registering its own mark or restrict its right to enforce the mark against bad actors. And yet there is no such mention. The absence of any suggestion in the legislative history that Congress intended these results supports the conclusion that the proposed construction of the Director is "absurd." *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 468 (2002) (Stevens, J. dissenting) (finding proposed statutory construction to be absurd absent meaningful discussion in legislative history); *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 527 (1989) (Scalia, J.,

concurring in judgment) (when confronted with statutory language that produces an absurd result, it is appropriate "to observe that counsel have not provided, nor have we discovered, a shred of evidence that anyone has ever proposed or assumed such a bizarre disposition"); *Harrison v. PPG Industries, Inc*., 446 U.S. 578, 602 (1980) (Rehnquist, J., dissenting) ("In a case where the construction of legislative language … makes so sweeping and so relatively unorthodox a change … , I think judges as well as detectives may take into consideration the fact that a watchdog did not bark in the night").

### D. The City of Houston's Arguments Regarding Construction of the Term "Applicant" in § 2(b) should be Considered by this Court

Citing *In re Watts*, 354 F.3d 1362, 1367 (Fed. Cir. 2004), the Director argues that the City of Houston's positions regarding construction of the term "applicant" in § 2(b) should not be considered because they were allegedly never raised before the TTAB. (Dr. Br. at 19). *In re Watts*, however, is distinguishable from the present case because the waived claim in that case was directed to the factual determination as to the scope of the prior art for a patent application. *Id*. In contrast, the City of Houston's position in this appeal is solely directed to the legal issue of statutory construction. Purely legal questions are reviewed under the *de novo* standard of review, even if a particular argument as to that legal question is not raised below. *See Golden Bridge Technology, Inc. v. Nokia, Inc*., 527 F.3d

1318 (Fed. Cir. 2008) (noting that appellate courts may apply the correct law, even if the parties did not argue it below, if the issue is properly before the court).

Further, the Supreme Court has held that claims are deemed waived or forfeited, but not arguments. *See Lebron v. Nat'l Railroad Passenger Corp.*, 513 U.S. 374, 378-79 (1995) (holding that arguments not raised until after certiorari was granted were not waived and should be addressed in the normal course); *Yee v. Escondido*, 503 U.S. 519, 534 (1992) (holding that a party can make any argument in support of a claim that has been properly presented, and that parties are not limited to the precise arguments they made below). The City of Houston's arguments do not constitute any new claims. Instead, they constitute alternative arguments to support what has been the City of Houston's consistent claim from the very beginning, namely, that the Lanham Act should be construed to allow government entities to register their own insignias.

As set out in its opening Brief, all of the City of Houston's arguments as to how the term "applicant" should be construed support its consistent claim that government entities are proper "applicants" under § 2(b) of the Trademark Act. Therefore, City of Houston has not waived its right to make these arguments and this Court should fully consider all of the City of Houston's positions and arguments in deciding this appeal.

12

## III.  CONCLUSION

For the reasons set forth above, the City of Houston respectfully requests that the decision of the Trademark Trial and Appeal Board be reversed, and that the City of Houston's application be remanded to the USPTO with instructions to allow registration of the City of Houston's mark.

Respectfully submitted,

Dated:  December 14, 2012            By:     **/s/markgchretien**

Mark G. Chretien
Ben D. Tobor
Anthony F. Matheny
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77021
Telephone: (713) 374-3528
Facsimile: (713) 754-7528
chretienm@gtlaw.com

Attorneys for Appellant
City of Houston

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December, 2012, a true and correct copy of the foregoing reply REPLY BRIEF FOR APPELLANT CITY OF HOUSTON was caused to be served through the Court's ECF system on the following counsel for Appellee:

Ms. Christina J. Hieber
Office of the Solicitor
United States Patent and Trademark Office
Mail Stop 8, PO Box 1450
Alexandria, Virginia  2313-1450

By: **/s/markgchretien**
Mark G. Chretien