2012-1356
(Serial No. 77/660,948)

# In the United States Court of Appeals for the Federal Circuit

### IN RE CITY OF HOUSTON

**Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.**

## JOINT APPENDIX

## (CORRECTED)

Mark G. Chretien
Ben D. Tobor
Anthony F. Matheny
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3528
Facsimile: (713) 754-7528
Attorneys for Appellant
City of Houston

Raymond T. Chen
Christina J. Hieber
Thomas L. Casagrande
OFFICE OF THE SOLICITOR
U.S. Patent and Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, VA  22313-1450
Attorneys for Appellee
Director of the U.S. Patent &
Trademark Office

# JOINT APPENDIX
# TABLE OF CONTENTS

| DATE | DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| 01/18/12 | BOARD'S DECISION | A1-A24 |
| 04/25/12 | ENTIRE DOCKET SHEET FROM PROCEEDINGS BELOW | A25-A26 |
| 02/01/09 | APPLICATION | A27-A49 |
| 10/20/09 | RESPONSE TO NON-FINAL ACTION | A57 |
| 12/17/09 | NON-FINAL ACTION | A89-A90; A92-A99 |
| 06/16/10 | RESPONSE TO NON-FINAL ACTION | A100; A102-A108 |
| 07/21/10 | FINAL REFUSAL | A137-A140 |
| 01/14/11 | NOTICE OF APPEAL | A147 |
| 03/15/11 | APPLICANT'S APPEAL BRIEF | A179 |
| 04/20/11 | EXAMINING ATTORNEY'S APPEAL BRIEF | A188 |
| 05/09/11 | APPLICANT'S REPLY BRIEF | A197-A198 |
| 01/18/12 | BOARD'S DECISION: AFFIRMED | A219 |
| 03/16/12 | APPEAL TO CAFC | A243-A245 |

THIS DECISION IS A
PRECEDENT OF THE TTAB

Mailed: January 18, 2012

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**

———

In re City of Houston

———

Serial No. 77660948
Filed February 1, 2009

———

Mark G. Chretien and Ben D. Tobor of Greenberg Traurig LLP
for applicant.

Sally Shih, Examining Attorney, Law Office 106, Mary I.
Sparrow, Managing Attorney.

———

**Before Kuhlke, Cataldo, and Mermelstein, Administrative**
**Trademark Judges.**

**Opinion by Mermelstein, Administrative Trademark Judge:**

The City of Houston, Texas seeks registration on the

Principal Register of the following mark:



for "municipal services, namely, promoting trade, commerce,

economic development and tourism; city administrative

services, namely, business administration and management of

Serial No. 77660948

municipality services," in International Class 35; and "municipal services, namely, providing public utilities services," in International Class 39.[1]

Registration has been finally refused on the ground that the mark "includes a governmental insignia of the City of Houston." Trademark Act § 2(b), 15 U.S.C. § 1052(b). Applicant appealed, and the appeal has been fully briefed.

This appeal raises an issue of first impression: Does Trademark Act § 2(b) bar registration when the applicant is a government entity seeking to register as a service mark its own flag, coat of arms, or other insignia? We conclude that it does, and we accordingly affirm the refusal to register.[2]

I.   **Preliminary Issues**

Applicant attached several exhibits to its opening

---

[1] The application is based on an allegation of first use and use in commerce as of February 1, 2009, for both classes. Applicant has disclaimed the exclusive right to use "CITY OF HOUSTON TEXAS" apart from the mark as shown. The application contains the following description of the mark:

- The mark consists of a circular seal having a rope pattern contour with a design of a plow, a locomotive and a five pointed Texas star, and the wording "CITY OF HOUSTON TEXAS" within the seal and a fleur de lis on each side of the term "TEXAS".

[2] We also decide today *In re Gov't of the Dist. of Columbia*, ___ USPQ2d ___, App. No. 77643857 (TTAB Jan. 18, 2012), involving similar legal issues.

2

Serial No. 77660948

brief on appeal,[3] and in its brief listed thirteen third-party registrations in support of its argument. *See* App. Br. at 10. Copies of the thirteen listed registrations were attached to applicant's reply brief. In her brief on appeal, the examining attorney objected to consideration of both the listed third-party registrations and the other evidence attached to applicant's brief, on the ground that neither were timely, and that the list of registrations was insufficient to make them of record. Ex. App. Br. at 6.

The examining attorney's objection to the exhibits to applicant's opening brief is overruled. All of this material was submitted during examination, in connection with applicant's June 18, 2010, response to an Office action. While there was no need to attach additional copies to applicant's appeal brief, *Life Zone Inc. v. Middleman Group Inc.*, 87 USPQ2d 1953, 1955 (TTAB 2008) (evidence attached to briefs will almost always be either untimely or duplicative, and in either event should not be filed), striking this material would be pointless as it is already properly of record.

---

[3] The exhibits to applicant's brief consisted of a copy of Trademark Act § 2 (Exh. A); a copy of the Trademark Act of 1905, § 5 (Exh. B); two pages of what appear to be errata pertaining to a law journal article, *Flags and Seals of Texas*, 33 S. Tex. L. Rev. 215, pp. vi-vii (1992) (Exh. C); and an excerpt from a book, SCOT M. GUENTER, THE AMERICAN FLAG, 1777-1924, 132-153, 228-233 (1990) (Exh. D).

Serial No. 77660948

With respect to the list of thirteen third-party registrations set out in applicant's opening brief and the copies of those registrations attached to applicant's reply brief, we note that those same registrations were listed[4] in applicant's June 18, 2010, response to an Office action. In her final refusal, the examining attorney neither discussed applicant's listed registrations, nor did she inform applicant that a mere list was not a proper means to introduce registrations into the record.[5]

---

[4] Only the registration number and literal elements of the marks appear in applicant's lists; any design elements in the marks were not set out in either applicant's response to the Office action or in applicant's opening brief, nor is other information such as the names of the registrants provided.

[5] It is well-established that in order to make third-party registrations properly of record, "applicant should submit copies of the registrations themselves, or the electronic equivalent thereof" from the USPTO's electronic databases, now known as TARR or TESS. *In re Broadway Chicken Inc.*, 38 USPQ2d 1559, 1560 n.6 (TTAB 1996) (citing *In re Smith and Mehaffey*, 31 USPQ2d 1531 (TTAB 1994)). Such submissions should be made prior to appeal or, if after appeal, pursuant to a remand of the matter to the examining attorney for further examination. Trademark Rule 2.142(d).

Records of registrations can change over time. The requirement for submission of copies of cited third-party registrations provides a definitive record for the USPTO to review, both during examination and upon appeal to the Board, and provides clear notice to interested parties and the public of the record upon which an administrative decision regarding registrability was made. Similarly, the USPTO must provide a complete record of a proceeding for any reviewing court. *See* 35 U.S.C. § 143 ("[T]he Director shall transmit to the United States Court of Appeals for the Federal Circuit a certified list of the documents comprising the record in the Patent and Trademark Office. The court may request that the Director forward the original or certified copies of such documents during pendency of the appeal."); Trademark Rule 2.191. Submission of copies of

Serial No. 77660948

We find that the examining attorney's failure to
advise applicant of the insufficiency of the list of
registrations when it was proffered during examination
constituted a waiver of any objection to consideration of
that list.  Accordingly, we will consider the same list of
registrations set out in applicant's opening brief "for
whatever limited probative value such evidence may have."
*In re Broyhill Furniture Indus. Inc.*, 60 USPQ2d 1511, 1513,
n.3 (TTAB 2001).

We reach a different conclusion with respect to the
copies of applicant's thirteen listed third-party
registrations attached to its reply brief.  "The record in
the application should be complete prior to the filing of
an appeal.  The ... Board will ordinarily not consider
additional evidence filed with the Board by the appellant
or by the examiner after the appeal is filed."  Trademark
Rule 2.142(d).  This is especially true with respect to
evidence submitted for the first time with a reply brief,
to which the examining attorney may not respond.  *In re
Zanova Inc.*, 59 USPQ2d 1300, 1302 (TTAB 2001) ("By
attempting to introduce evidence with its reply brief,
applicant has effectively shielded this material from

---

cited registrations enables the USPTO to fulfill its
responsibility to a reviewing court in the event of an appeal.

review and response by the Examining Attorney."). If
applicant wished to submit proper evidence of its third-
party registrations after filing its appeal, it should have
requested a remand for that purpose, which - if granted[6] -
would have given the examining attorney an opportunity to
examine the new evidence and respond to it appropriately.
Trademark Rule 2.142(d). Applicant having failed to do so,
we find the evidence submitted with applicant's reply brief
"manifestly untimely," and we have not considered it.[7]  *In*

---

[6] We do not suggest that such a request would have been granted.
A request for remand will only be granted upon a showing of good
cause. *See generally*, TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF
PROCEDURE ("TBMP"), § 1207.02 (3d ed. 2011) (and cases cited
therein). Whether good cause has been demonstrated will depend,
*inter alia*, on the point in the appeal at which the request is
made and the reason for the delay in submitting the evidence.

[7] Applicant argues that the evidence attached to its reply brief
should be considered because the examining attorney failed to
object to its list of registrations submitted during examination.
Reply Br. at 3-4 (citing *Broyhill*, 60 USPQ2d at 1513 n.3).
Applicant misreads *Broyhill*. That case did not permit submission
of proper evidence of the listed registrations with Broyhill's
brief, let alone its reply brief. In *Broyhill*, "the sole
evidence cited by applicant ... [was] a list of five third-party
registrations." 60 USPQ2d at 1513 (emphasis added). Upon the
examining attorney's objection in her brief to "such evidence,"
*i.e.*, the list, we held the objection waived, *id.* at n.3, and
considered "applicant's evidence regarding ... third-party
registrations ... for whatever limited probative value such
evidence may have." *Id.* The waiver in *Broyhill* was thus limited
to the evidence which was improperly submitted during examination
but not objected to - Broyhill's list of registrations. *See also
In re Dos Padres Inc.*, 49 USPQ2d 1860, 1861 n.2 (TTAB 1998).

In this case, the examining attorney's failure to object during
examination constituted a waiver of objection only to the
evidence which was improperly submitted during examination,
namely, the list of registrations. The absence of an objection
to the list was not a waiver of any objection to the future
untimely submission of the registrations with applicant's brief

Serial No. 77660948

*re Petroglyph Games Inc.*, 91 USPQ2d 1332, 1334 (TTAB 2009).

II.  **Interpretation of Trademark Act § 2(b)**

    A.  **Statutory Provisions**

    The relevant statutory language provides as follows:

> No trademark by which the goods of the applicant
> may be distinguished from the goods of others
> shall be refused registration on the principal
> register on account of its nature unless it—
>
> . . .
>
> Consists of or comprises the flag or coat of arms
> or other insignia of the United States, or of any
> State or municipality, or of any foreign
> nation,[8] or any simulation thereof.

Trademark Act § 2(b); 15 U.S.C. § 1052(b).

    The quoted provision is substantially similar to a

provision of the earlier Trademark Act of 1905, which read

as follows:

> [N]o mark by which the goods of the owner of the
> mark may be distinguished from other goods of the
> same class shall be refused registration as a
> trade-mark on account of the nature of such mark
> unless such mark
>
> . . .
>
> Consists of or comprises the flag or coat of arms
> or other insignia of the United States or any
> simulation thereof, or of any State or

---

or reply brief.  Our consideration of these third-party
registrations is thus limited to the information which applicant
listed at page 8 of its June 18, 2010, Office action response
(and which is repeated at page 10 of its opening brief).

[8] For ease of reference, we refer generally to "the flag or coat
of arms or other insignia of the United States or of any State or
municipality, or of any foreign nation" (and to their equivalent
in the 1905 statute and the Paris Convention) as governmental or
official insignia.

Serial No. 77660948

municipality or of any foreign nation....

Trademark Act of 1905, § 5, ch. 592 § 5, 33 Stat. 724

(1905) (repealed 1946).

### B.    Construction

As explained at greater length in *District of*

*Columbia,*

> [w]e find the quoted language of the current
> statute – and that of its predecessor – to be
> plain and clear on its face. Reversing the
> negative syntax of Section 2, we read the quoted
> subsection to bar registration of any mark which
> is or includes the "coat of arms or other
> insignia of ... any ... municipality." While the
> text does not resolve all definitional issues
> (*i.e.*, what constitutes "other insignia" or a
> "simulation"), those questions are not at issue
> in this case. Further, we find the statute to be
> uniform in its applicability. The text of the
> statute offers no exception to the prohibition on
> registration, even when a governmental entity
> applies to register its own official insignia.

Slip op. at 12-13 (footnote omitted).

Applicant argues that "Trademark Act Section 2(b) is

silent as to whether or not countries, states, or

municipalities may register their own insignia." App. Br.

at 6. We disagree. While it is true that Section 2(b)

does not explicitly answer applicant's narrow question, it

clearly provides an answer because it requires refusal of

registration when the applied-for mark "consists or

comprises the flag or coat of arms or other insignia of ...

any ... municipality." The statute is not "silent" as to

8

whether a municipality may register its own official insignia – it provides that *all* such marks are to be refused.  The specific statement that applicant finds missing in the statutory language is simply unnecessary to its interpretation, because the prohibition on the registration of *all* official insignia resolves the question of whether *some* official insignia may be registered.  Under any theory of interpretation, a categorical statement is not incomplete or unclear merely because it does not explicitly set out every element or subset of the category, and the language of Trademark Act § 2(b) is no exception.  There is absolutely nothing in the statute itself which hints of a different result.

Accordingly, we find that Trademark Act § 2(b) on its face bars registration of all official insignia, regardless of the identity of the applicant.

## III. Applicant's Arguments

Notwithstanding what appears to be the clear meaning of the statutory provision at issue, applicant raises three points in arguing for reversal of the refusal to register:

> (i)    the statutory language should be construed to allow a city to register its own official seal to identify municipal services that the city provides to its citizens under the seal;

> (ii)   Applicant is seeking registration for its city seal for use in connection with services

9

Serial No. 77660948

> provided by the Applicant, and not as an "emblem
> of national authority"; and

> (iii) at least thirteen ... other cities have been
>       allowed to register their city seals, with at
>       least one ... of these registrations issuing
>       after Applicant's mark had been rejected.

App. Br. at 3.

### A.    Origin of Trademark Act § 2(b)

Noting that what is now Trademark Act § 2(b) first

appeared in substantially similar form as § 5 of the

Trademark Act of 1905, applicant hypothesizes that the

provision "was enacted to prevent desecration of the flag,

coat of arms or related symbols by halting the registration

of commercial trademarks that contained representations of

those marks."  App. Br. at 7.  Applicant claims that "[t]he

original statute was not intended to prevent the relevant

states, countries, or municipalities from protecting their

own insignia.  Instead, the purpose was the exact opposite,

to protect the states, countries, or municipalities from

having their insignia misappropriated or used for improper

commercial purposes by private individuals or entities."

App. Br. at 8.

While we are unable to conclusively verify applicant's

theory as to the origin of Trademark Act § 2(b),[9] it makes

---

[9] As authority for its hypothesis, applicant cites a footnote in
a law review article, *Flags and Seals of Texas*, 33 S. Tex. L.

10

Serial No. 77660948

little difference.  Even if we accept the premise that

Trademark Act § 2(b) was intended to prevent commercial

exploitation of the flag (and other official indicia), it

does not necessarily follow that Congress intended that

governments should be allowed to register their own

official insignia.  Rather – assuming applicant's premise –

it would appear that Congress instead opted to prevent

---

Rev. 215 (1992), which in turn cites a book, SCOT M. GUENTER, THE
AMERICAN FLAG, 1777-1924, 138-39 (1990), for the proposition that
"[t]he 1905 trademark statute was the earliest federal flag-
protection law.  It was enacted to prevent desecration of the
flag, coat of arms, and related symbols by halting the
registration of commercial trademarks that contained
representations of those marks."  33 S. Tex. L. Rev. at 238 n.
73.5; see App. Br. at 7-8.

However, the excerpts from Guenter's book which applicant has
submitted do not entirely support applicant's theory of the
genesis of Trademark Act § 2(b).  Guenter describes the rise of
patriotic fervor in the waning years of the nineteenth century
and the rise of what he refers to as the "cult of the flag,"
fanned by nationalistic movements and the formation of hereditary
societies and other patriotic organizations.  Many members of
such organizations were dismayed by the commercial exploitation
of the U.S. flag, and lobbied for both state and federal laws
against such use.  Nonetheless, while these groups enjoyed some
legislative success at the state level, and some success in
courts and other tribunals, see Dist. of Columbia, slip op. n.
14, Guenter notes that they were rebuffed in their efforts to
have their desired federal legislation passed.  Indeed, in the
excerpt submitted by applicant, Guenter makes no mention at all
of the Trademark Act of 1905 or the provision which ultimately
became Section 2(b) of the current Act.

Thus, while Guenter's "cult of the flag" was quite likely
supportive of the ultimate adoption of § 5 of the Trademark Act
of 1905, applicant's authorities provide no direct support for
the notion that Trademark Act § 2(b) originated as a flag
desecration statute.  We note that the applicant in District of
Columbia presents an alternative history of Section 2(b).  See
id. slip op. at 17-24.  Ultimately, we find it unnecessary to
definitively determine the origins of Trademark Act § 2(b)
because it makes no difference; under either theory we would
reach the same result.

11

commercial exploitation of such insignia by a complete ban

on registration for any use of such indicia in commerce.

That is the plain meaning of the legislation which was

enacted.

Trademark law is fundamentally about the use of marks

in commerce.  If the motivation behind Section 5 of the

Trademark Act of 1905 was indeed concern over commercial

exploitation of the flag and other official insignia, it

would have been logical to ban all registrations of

official insignia, even if the commercial use involved is

by the government itself.

While applicant might be of the opinion that Congress

employed a larger hammer than necessary to hit that

particular nail, we are not in the business of rewriting

statutes to more narrowly effect what we suppose might have

been Congress' intention.  We must presume, of course, that

Congress knew what it was doing when it drafted Section 5

of the Trademark Act of 1905 and later Section 2(b) of the

1946 Act.  *United States v. Goldenberg*, 168 U.S. 95, 102-03

(1897).  And if that statutory language is clear - as we

find it to be in this case - there is a "strong presumption

that the plain language of the statute[] expresses

congressional intent [which] is rebutted only in rare and

12

Serial No. 77660948

exceptional circumstances."[10] *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008).

In this case, the statutory language at issue clearly indicates that all marks which "[c]onsist[] of or comprise[] the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof" are to be refused registration. The statute does not provide for any exception to the rule, although one could easily have been written had it been intended to apply. We accordingly presume that Congress intended the prohibition on registration of official insignia to apply universally, without regard to the identity of the applicant.

B.    **Applicant's Use of its Official Seal**

Applicant emphasizes that it "is not seeking to register its City Seal as an 'emblem of authority.' Instead, it is seeking to register the City Seal in connection with specific municipal services that it provides to its citizens via its various City departments."

---

[10] We note that applicant has cited no discussion in legislative hearings, speeches, committee reports, or the like of this provision in the legislative history of either Section 5 of the 1905 Act or the current Trademark Act § 2(b), and we have not been able to find any. Whatever may be argued about the role of legislative history in interpreting statutory language, there is nothing in the history of this legislation which clearly suggests an interpretation of Trademark Act § 2(b) contrary to its clear language.

13

Serial No. 77660948

App. Br. at 9. Applicant argues that "insignia which are 'merely used to identify a service or facility of the Government' do not fall within the general prohibitions of the statute." *Id.* (citing *In re United States Dep't of the Interior*, 142 USPQ 506 (TTAB 1964)).

Applicant seeks registration of its official seal for use in connection with "municipal services, namely, promoting trade, commerce, economic development and tourism; city administrative services, namely, business administration and management of municipality services," in International Class 35; and "municipal services, namely, providing public utilities services," in International Class 39. The application thus identifies a number of activities in which governments typically engage.[11] However, applicant misreads *Department of the Interior* to the extent it finds support in that case for the contention that the nature of the goods and services identified in the application is a factor in determining whether Trademark Act § 2(b) prohibits registration of official insignia. Neither the statute nor *Department of the Interior* makes such a distinction.

---

[11] The services recited in this case differ in this regard from the goods identified in the application at issue in *District of Columbia*. In that case, the identified goods appear to be in the nature of commercial merchandise. *Dist. of Columbia*, slip op. at 2-3.

14

**Serial No. 77660948**

*In re U.S. Department of the Interior* involved an
application to register the following mark used by the
Department in connection with

> (1) Operation and maintenance of recreational and
> educational facilities in connection with parks,
> monuments, camp sites, trails, museums and similar
> institutions, and (2) Making available to the public
> publications and other informational material in
> connection with the activities of (1).



Registration was refused under Trademark Act § 2(b).
On appeal, "[t]he question for determination ... [was]
whether the insignia of the 'National Park Service,' here
sought to be registered, falls within the category of 'or
other insignia' prohibited by Section 2(b)." *Id.*, 142 USPQ
at 507. After analyzing the text of the statute, the Board
construed Trademark Act § 2(b) to prohibit registration of

> insignia of the same general class as "the flag or
> coats of arms" of the United States. Since both the
> flag and coat or [sic] arms are emblems of national
> authority it seems evident that other insignia of
> national authority such as the Great Seal of the
> United States, the Presidential Seal, and seals of
> government departments would be equally prohibited
> registration under Section 2(b).

15

*Id.*

The Board found that the applied-for mark was not similar in kind to emblems of governmental authority such as the flag or Great Seal of the United States. The proper analysis thus focuses on the nature of the mark at issue.

Nonetheless, applicant seizes on the final sentence of the case, which directly follows the language quoted above: "On the other hand, it appears equally evident that department insignia which are merely used to identify a service or facility of the Government are not insignia of national authority and that they therefore do not fall within the general prohibitions of this section of the Statute." *Id.* Applicant contends that "it is seeking to register the City Seal in connection with specific municipal services that it provides to its citizens. ... These permitted uses do not fall within the narrowly defined prohibitions of the statute set forth in the case law." App. Br. at 9.

We do not construe the final sentence in *Department of the Interior* as indicating that the applicability of Trademark Act § 2(b) to official insignia depends on the goods or services recited in the application. The statute says no such thing, and the panel in *Department of the Interior* did not even hint at any authority or rationale

16

for such a rule.  Indeed, until this last sentence, the
decision did not in any way discuss the relevance of the
goods or services to the determination of whether
registration is prohibited under Trademark Act § 2(b).  The
decision focused instead on the mark itself and whether it
was akin to "the flag or coat of arms ... of the United
States."

It is thus the nature and status of the applied-for
*mark* that invokes the prohibition of § 2(b).  We understand
the final sentence of *Department of the Interior* to simply
recognize that sometimes resort to consideration of the use
of the applied-for mark by the relevant government entity
may be necessary in determining whether the mark is in fact
"the flag or coat of arms or other insignia" of that
government.  Although *Department of the Interior* makes
clear that the statute prohibits registration of "emblems
of ... authority" on a par with the Great Seal of the
United States, the question of *whether* an applied-for
trademark meets that definition may not always be
determined simply by looking at the mark itself.  Thus if
the evidence demonstrates that the relevant authority *uses*
the applied-for mark as an official insignia, it should be
accorded such status under the Trademark Act.  However, if
the applied-for mark is never used as an emblem of

17

Serial No. 77660948

authority, but instead is merely used to identify some
service or program provided by a government agency, the
mark would not fall within the meaning of "other insignia"
and should not be refused under Trademark Act § 2(b).[12]  But
however the conclusion is reached, once it is determined
that the applied-for mark is the official insignia of "the
United States, ... any state or municipality, or of any
foreign nation," its registration is prohibited, regardless
of the specific goods or services for which registration is
sought.

    In this case, we are constrained to determine that the
City of Houston's applied-for mark is such an official
insignia, barred from registration under Section 2(b).
Applicant clearly admitted throughout examination and in
its briefs that the subject of its application is the
city's official seal. *E.g.*, Application (Feb. 1, 2009)
("The mark consists of the official seal of the City of
Houston, Texas."); Req. for Recon. at 2 (June 18, 2010)
("Applicant's mark is the City Seal ... for the City of
Houston, Texas"); App. Br. at 3 ("Applicant is seeking

---

[12] In *Department of the Interior*, the mark was actually used in
connection with the provision of recreational and educational
services in public parks, and not as something akin to an
official seal of the government.  The Board took pains to
emphasize that nothing in Trademark Act § 2(b) should be read as
a general prohibition on the registration of *any* trademarks by
governments.  *Dep't of the Interior*, 142 USPQ at 506-07.

**Serial No. 77660948**

registration for its city seal"). Therefore, in determining whether the subject application is for a mark described in Section 2(b), we have no need to examine applicant's actual use of its seal, or a statute or other evidence of whether applicant adopted the applied-for mark as an official "emblem of authority."[13]

Finally, we think it obvious that whether the mark is an official insignia is not determined (or limited) by the goods or services for which application is sought. Thus, the fact that applicant seeks registration for use of its official seal in connection with certain identified services is not particularly probative of whether the seal is, in fact, a "flag or coat of arms or other insignia" under the statute. Once the status of the mark as an official insignia is established, it does not matter what else the mark may be used for, and Trademark Act § 2(b) cannot be avoided simply by limiting the application to certain goods or services.[14]    Trademark Act § 2(b) requires

---

[13] We further note that there is no dispute that applicant is a "municipality," within the meaning of Trademark Act § 2(b). A "municipality" is "[a] legally incorporated or duly authorized association of inhabitants of limited area for local governmental or other public purposes." BLACK'S LAW DICTIONARY, 918 (5th ed. 1979), of which we take judicial notice.

[14] A contrary rule would permit precisely the type of harm that applicant argues Trademark Act § 2(b) was intended to prevent, namely, commercialization of the government's emblems of authority. By way of example, under the statute the Great Seal of the United States is not registrable as a trademark, even by

19

Serial No. 77660948

refusal of registration when *the mark* "consists of or
comprises the flag or coat of arms or other insignia of the
United States, or of any State or municipality, or of any
foreign nation," regardless of the particular goods or
services for which registration is sought.

### C.    Allegedly Inconsistent Registrations

Finally, we consider applicant's argument that
registration should be allowed because "at least thirteen
... other cities have been allowed to register their city
seals."

Applicant submitted a list of thirteen registrations
in support of this argument. Although we will consider
this evidence, it has very little probative value. As
noted, applicant's list consists only of marks and
registration numbers. This evidence is incomplete, at
best, as it sets out only the wording in the listed marks,
without displaying the owner of the registration, any
design elements, disclaimers, or other possibly relevant
data. More importantly, however, there is no evidence in
this record that the listed registrations are, in fact, the
official seals of the cities mentioned in the marks.

the United States government, and it makes no difference at all
whether registration is sought for the services of "managing a
national government" or "operation of recreational facilities in
parks" or - as in the parallel case - "cuff links, mugs, and
sweat pants."

20

**Serial No. 77660948**

Except to the extent prohibited by Trademark Act § 2(b),
cities are clearly permitted to apply for and own
trademarks, as are states and national governments. *Dep't
of the Interior*, 142 USPQ at 506 ("the granting of
trademark and service mark registrations to state and
governmental agencies does not appear to be contrary to the
established policy of the Patent [and Trademark] Office").
We cannot presume simply from the fact that the marks
include words such as CITY OF FULLERTON CALIFORNIA, Reg.
No. 2,877,383, or CITY OF MIAMISBURG OHIO'S STAR CITY, Reg.
No. 2,522,124, that the listed marks are in fact the
official emblems of authority of the named cities.

But even if we were to assume that all of the listed
registrations are inconsistent with the examining
attorney's refusal in this case, reversal is not required.
As noted at the outset, the issue we decide today is one of
first impression with the Board.  As applicant recognizes,
App. Br. at 11, it is well-settled that we are not bound by
the decisions of examining attorneys, nor do applicants
have a substantive right to consistency. *In re Nett
Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed.
Cir. 2001); *see also In re Rodale Inc.*, 80 USPQ2d 1696,
1700 (TTAB 2006) ("Although consistency in examination is a
goal of the Office, the decisions of previous Trademark

21

**Serial No. 77660948**

Examining Attorneys are not binding on us, and we must
decide each case based on the evidence presented in the
record before us"); *In re Finisair Corp.*, 78 USPQ2d 1618,
1621 (TTAB 2006); *In re Wilson*, 57 USPQ2d 1863 (TTAB 2001)
(administrative law doctrine of "reasoned decisionmaking"
does not require consistent treatment of applications to
register marks; each application for registration must be
considered on its own record and merits).

Nonetheless, applicant attempts to limit this
principle to "issues involving subjective determinations."

> [T]he present case is not one that hinges on a
> subjective determination of, for example,
> likelihood of confusion, where previous decisions
> with different facts may not be directly
> applicable and reliance on the findings of these
> previous decisions would not be warranted.
> Instead, this case deals with the non-subjective,
> straight-forward application of a statute, which
> should be applied uniformly to <u>all</u> applicants.

App. Br. at 11.

We agree, of course, that a legal determination such
as whether Trademark Act § 2(b) applies to applicant's
attempt to register its own official seal should be applied
consistently. However, our obligation is to make such a
decision correctly, and we may not abdicate that
responsibility to examining attorneys who made
determinations in earlier applications. To the contrary,
it is the Board which must correct examining attorneys if

22

Serial No. 77660948

they have applied an incorrect legal standard in a case
that comes before us.[15]  The third-party registrations noted
by applicant here are not at issue, and in any event, there
is far too little information on this record to determine
anything relevant about their registration.[16]  But as the
Court of Appeals for the Federal Circuit noted, "[e]ven if
all of the third-party registrations should have been
refused registration ..., such errors do not bind the USPTO
to improperly register Applicant's marks."  *In re
Shinnecock Smoke Shop*, 571 F.2d 1171, 91 USPQ2d 1218, 1221
(Fed. Cir. 2009) (*citing In re Boulevard Entm't*, 334 F.3d
1336, 67 USPQ2d 1475, 1480 (Fed. Cir. 2003)).

IV.  **Conclusion**

We have carefully considered all of applicant's
evidence and arguments in favor of registration.
Nonetheless, for the reasons we have discussed, we conclude
that Trademark Act § 2(b) prohibits without exception the
registration of marks which "[c]onsist[] of or comprise[]
the flag or coat of arms or other insignia of the United
States, or of any State or municipality, or of any foreign

---

[15] Indeed, we expect that a clear decision on this legal issue
will promote the goal of consistency.  As noted, we have not
heretofore had the occasion to rule on this issue.
[16] Only the mark in the subject application is before us today.
Nothing in this decision should be read as an opinion on the
registrability of any other mark or the validity of any
registration noted by applicant.

**Serial No. 77660948**

nation." We further conclude that applicant's official
seal as depicted in the subject application is such a mark,
and that registration is therefore barred by statute.

Applicant argues that Congress did not intend such a
result, although it provides no clear indication that
Congress intended anything other than what the statute
clearly provides. Because we find the language of
Trademark Act § 2(b) clear on the question presented, we
have neither the authority nor a basis to deviate from its
terms. Applicant and others in its position are free, of
course, to pursue a legislative solution, but we are
without authority to write an exception into the statute.


*Decision:* The refusal to register is AFFIRMED.

Form PTO 55 (12-80)

# U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

<u>April 25, 2012</u>
(Date)

**THIS IS TO CERTIFY** that the annexed is an accurate statement of the content entries

in the file of the trademark application identified below.  Information in the statement

was collected from the TTABvue and TRAM electronic databases of this Office.  It lists

the papers comprising the record before the United States Patent and Trademark Office.

**The Trademark Application of:**

**Applicant: City of Houston**

**Application No.: 77/660,948**

**Date Filed:  February 1, 2009**

**Mark :   CITY OF HOUSTON TEXAS and design**

By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*Marcia L. Fletcher*
*Certifying Officer*

**PROSECUTION HISTORY for Serial No. 77/660,948**

| DATE | DESCRIPTION |
|---|---|
| 02/01/2009 | APPLICATION |
| 02/05/2009 | NOTICE OF DESIGN SEARCH CODE |
| 04/21/2009 | NON-FINAL ACTION |
| 10/23/2009 | RESPONSE TO NON-FINAL ACTION |
| 11/18/2009 | APPROVED FOR PUBLICATION - PRINCIPAL REGISTER |
| 12/17/2009 | NON-FINAL ACTION |
| 06/18/2010 | RESPONSE TO NON-FINAL ACTION |
| 07/21/2010 | FINAL REFUSAL |
| 01/14/2011 | NOTICE OF APPEAL |
| 01/18/2011 | APPEAL ACKNOWLEDGED |
| 03/15/2011 | APPLICANT'S APPEAL BRIEF |
| 03/15/2011 | APPEAL FORWARDED TO EXAMINER FOR BRIEF |
| 04/20/2011 | EXAMINING ATTORNEY'S APPEAL BRIEF |
| 05/09/2011 | APPLICANT'S REPLY BRIEF |
| 05/09/2011 | MEMO FORWARDING REPLY BRIEF |
| 01/18/2012 | BOARD'S DECISION: AFFIRMED |
| 03/16/2012 | APPEAL TO CAFC |

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 12/31/2008)

# Trademark/Service Mark Application, Principal Register

### Serial Number: 77660948
### Filing Date: 02/01/2009

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 77660948 |
| **MARK INFORMATION** | |
| **\*MARK** | \\TICRS\EXPORT5\IMAGEOUT5 \776\609\77660948\xml1\AP P0002.JPG |
| **SPECIAL FORM** | YES |
| **USPTO-GENERATED IMAGE** | NO |
| **LITERAL ELEMENT** | City of Houston Texas |
| **COLOR MARK** | NO |
| **\*DESCRIPTION OF THE MARK (and Color Location, if applicable)** | The mark consists of the official seal of the City of Houston, Texas. |
| **PIXEL COUNT ACCEPTABLE** | YES |
| **PIXEL COUNT** | 600 x 606 |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| **\*OWNER OF MARK** | City of Houston |
| **\*STREET** | 901 Bagby |
| **\*CITY** | Houston |
| **\*STATE (Required for U.S. applicants)** | Texas |

| *COUNTRY | United States |
|---|---|
| *ZIP/POSTAL CODE (Required for U.S. applicants only) | 77002 |

## LEGAL ENTITY INFORMATION

| TYPE | municipal corporation |
|---|---|
| STATE/COUNTRY WHERE LEGALLY ORGANIZED | Texas |

## GOODS AND/OR SERVICES AND BASIS INFORMATION

| * INTERNATIONAL CLASS | 035 |
|---|---|
| * IDENTIFICATION | municipal services, namely, promoting trade, commerce, economic development and tourism |
| FILING BASIS | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 02/01/2009 |
| FIRST USE IN COMMERCE DATE | At least as early as 02/01/2009 |

| SPECIMEN FILE NAME(S) | |
|---|---|
| ORIGINAL PDF FILE | spec-7220138196-222010627_._city_seal_specimen.pdf |
| CONVERTED PDF FILE(S) (7 pages) | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0003.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0004.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0005.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0006.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0007.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0008.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0009.JPG |
| SPECIMEN DESCRIPTION | Screenshot from Applicant's Internet website displaying the mark and advertising the services |
| * INTERNATIONAL | 039 |

| CLASS | |
|---|---|
| * IDENTIFICATION | municipal services, namely, providing city administration and public utilities services |
| FILING BASIS | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 02/01/2009 |
| FIRST USE IN COMMERCE DATE | At least as early as 02/01/2009 |
| SPECIMEN FILE NAME(S) | |
| ORIGINAL PDF FILE | spec-7220138196-222010627 . city_seal_specimen.pdf |
| CONVERTED PDF FILE(S) (7 pages) | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0003.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0004.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0005.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0006.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0007.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0008.JPG |
| | \\TICRS\EXPORT5\IMAGEOUT5\776\609\77660948\xml1\APP0009.JPG |
| SPECIMEN DESCRIPTION | Screenshot from Applicant's Internet website displaying the mark and advertising the services |
| ATTORNEY INFORMATION | |
| NAME | Mark G. Chretien |
| ATTORNEY DOCKET NUMBER | 116673.010100 |
| FIRM NAME | Greenberg Traurig LLP |
| STREET | 1000 Louisiana |
| INTERNAL ADDRESS | Suite 1700 |
| CITY | Houston |
| STATE | Texas |
| COUNTRY | United States |
| ZIP/POSTAL | 77002 |

| CODE | |
|---|---|
| PHONE | 713-374-3528 |
| FAX | 713-754-7528 |
| OTHER APPOINTED ATTORNEY | Ben D. Tobor, Anthony F. Matheny and Jason P. Sander |

## CORRESPONDENCE INFORMATION

| | |
|---|---|
| NAME | Mark G. Chretien |
| FIRM NAME | Greenberg Traurig LLP |
| STREET | 1000 Louisiana |
| INTERNAL ADDRESS | Suite 1700 |
| CITY | Houston |
| STATE | Texas |
| COUNTRY | United States |
| ZIP/POSTAL CODE | 77002 |
| PHONE | 713-374-3528 |
| FAX | 713-754-7528 |

## FEE INFORMATION

| | |
|---|---|
| NUMBER OF CLASSES | 2 |
| FEE PER CLASS | 325 |
| *TOTAL FEE DUE | 650 |
| *TOTAL FEE PAID | 650 |

## SIGNATURE INFORMATION

| | |
|---|---|
| SIGNATURE | /mgc/ |
| SIGNATORY'S NAME | Mark G. Chretien |
| SIGNATORY'S POSITION | Attorney of record, Texas bar member |
| DATE SIGNED | 02/01/2009 |

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 12/31/2008)

## Trademark/Service Mark Application, Principal Register

**Serial Number: 77660948**
**Filing Date: 02/01/2009**

## To the Commissioner for Trademarks:

**MARK:** City of Houston Texas (stylized and/or with design, see <u>mark</u>)

The literal element of the mark consists of City of Houston Texas.
The mark consists of the official seal of the City of Houston, Texas.
The applicant, City of Houston, a municipal corporation legally organized under the laws of Texas, having an address of
   901 Bagby
   Houston, Texas 77002
   United States
requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended.

   International Class 035: municipal services, namely, promoting trade, commerce, economic development and tourism

Use in Commerce: The applicant is using the mark in commerce, or the applicant's related company or licensee is using the mark in commerce, or the applicant's predecessor in interest used the mark in commerce, on or in connection with the identified goods and/or services. 15 U.S.C. Section 1051(a), as amended.

In International Class 035, the mark was first used at least as early as 02/01/2009, and first used in commerce at least as early as 02/01/2009, and is now in use in such commerce. The applicant is submitting one specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) Screenshot from Applicant's Internet website displaying the mark and advertising the services.

**Original PDF file:**
<u>spec-7220138196-222010627 . city_seal_specimen.pdf</u>
**Converted PDF file(s) (7 pages)**
<u>Specimen File1</u>
<u>Specimen File2</u>
<u>Specimen File3</u>
<u>Specimen File4</u>
<u>Specimen File5</u>
<u>Specimen File6</u>
<u>Specimen File7</u>

International Class 039:  municipal services, namely, providing city administration and public utilities services

Use in Commerce: The applicant is using the mark in commerce, or the applicant's related company or licensee is using the mark in commerce, or the applicant's predecessor in interest used the mark in commerce, on or in connection with the identified goods and/or services. 15 U.S.C. Section 1051(a), as amended.

In International Class 039, the mark was first used at least as early as 02/01/2009, and first used in commerce at least as early as 02/01/2009, and is now in use in such commerce. The applicant is submitting one specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) Screenshot from Applicant's Internet website displaying the mark and advertising the services.

**Original PDF file:**
spec-7220138196-222010627_._city_seal_specimen.pdf
**Converted PDF file(s) (7 pages)**
Specimen File1
Specimen File2
Specimen File3
Specimen File4
Specimen File5
Specimen File6
Specimen File7

The applicant hereby appoints Mark G. Chretien and Ben D. Tobor, Anthony F. Matheny and Jason P. Sander of Greenberg Traurig LLP
    Suite 1700
    1000 Louisiana
    Houston, Texas 77002
    United States
to submit this application on behalf of the applicant. The attorney docket/reference number is 116673.010100.

Correspondence Information: Mark G. Chretien
                Suite 1700
                1000 Louisiana
                Houston, Texas 77002
                713-374-3528(phone)
                713-754-7528(fax)

A fee payment in the amount of $650 has been submitted with the application, representing payment for 2 class(es).

**Declaration**

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.


Signature: /mgc/   Date Signed: 02/01/2009
Signatory's Name: Mark G. Chretien
Signatory's Position: Attorney of record, Texas bar member


RAM Sale Number: 6141
RAM Accounting Date: 02/02/2009

Serial Number: 77660948
Internet Transmission Date: Sun Feb 01 22:31:09 EST 2009
TEAS Stamp: USPTO/BAS-72.20.138.196-2009020122310927
3005-77660948-4401a5debca34c1fb6b418cd50
d71378df-CC-6141-20090201222010627249





| HOME | I WANT TO... | GOVERNMENT | RESIDENTS | BUSINESS | DEPARTMENTS | VISITORS |

Website [          ]  Entire Site ... [▼] 🔍    My ZIP Code 77002 [▼] 🔍

Saturday, January 31 - 2009



*Heritage Lanterns in Root Square, Across from Toyota Center*

* Mayor's State of the City Address
* 2009 CIP Public Meetings Schedules
* Mayor's 2009 Volunteer Houston Awards Information and Nomination Forms
* Digital TV Conversion Information
* Theater District Parking Online Survey

More City Headlines

Welcome to the City of Houston eGovernment Center. Here you can apply for a job, pay traffic tickets and pay water bills, find out about Houston events and the Mayor's Office of Special Events, and learn about the City government that serves you. See our Houston WiFi site. View our homepage photo archive and send us your favorite photo of Houston!





Would you like to receive periodic e-mails on important City issues of interest to you and your neighborhood? If so, please *click the graphic above* and register with CitizensNet today. Register Now!

View the CitizensNet Archive.

**January 17, 24, and 31**
**Neighbors Helping Neighbors Ike Cleanup**



The City of Houston's "Neighbors Helping Neighbors" program to assist elderly and physically challenged residents remove Hurricane Ike debris from their backyards to the curb has resumed. The "Neighbors Helping Neighbors" program is seeking volunteers from the community to assist with this effort on the next three consecutive Saturdays: January 17, 24 and 31, 2009.

With over 800 calls for service in this program, we have many homeowners, 60+ years old or physically challenged who can use your help. Many requests are being handled by professionals but



www.houstonhurricanerecovery.org



City of Houston
Hurricane Ike Recovery Guide

(Guide updated Tuesday, January 27, 2009 at 3:00 p.m.)

volunteers can complete the job by bagging, sweeping and moving the debris to the curb for pickup.

More ...

**January 21 to February 28**
**Mayor's New Year, New You Challenge**



The Mayor's New Year New You Challenge is a five week wellness program which aims to encourage and motivate Houstonians of all ages and abilities to engage in wellness activities during the New Year. Specifically, the challenge will raise participants' awareness of their daily physical activities, encourage healthy eating and routine exercise in a fun and supportive environment. More ...

**February 11**
**Housing and Employment Resources Expo (HERE) for People With Disabilities**



This unique event will provide an opportunity for people with disabilities to meet with prospective employers, as well as representatives from various housing related entities and other resource agencies. Participants will be able to participate in hands-on workshops pertaining to housing and employment issues and receive important information at booths hosted by community organizations, employers, and sponsors. More ...



**Get Moving Houston**

Mayor Bill White, Houston business heavyweights step up to the plate to launch new citywide wellness initiative. Houston Wellness Association seeks to make Houston



A roofing contractor and/or citizens can call 713.837.ROOF to get information on the program or view the online application.



**Gulf Coast Ike Relief Fund**
**c/o The Greater Houston**
**Community Foundation**
**4550 Post Oak Place, Suite 100**
**Houston, TX 77027**
www.ghcf.org

**Hurricane Ike Disaster Proclamations**



  

 GreenHoustonTX.gov

**Don't Stand In Line**
Online Services is your one-stop shop for online city services and links that offer e-Gov services. Use the drop down to select the service you require.



**Select Online Service Here ...**

| ▼ |

City of Houston eGovernment Center



"the model city for wellness".
More...




## Houston Forecast

## 57°F
Fair

Humidity: 28%
Wind: W at 8 mph
Wind Chill: 55°F

Weather by City,ST or Zip:
City, ST/Zip    Go



### Calendar of Events

| Dec | | January 2009 | | | | Feb | |
|---|---|---|---|---|---|---|---|
| All | S | M | T | W | T | F | S |
| | | | | | 1 | 2 | 3 |
| | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| | 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### Mayor Bill White



* Welcome to the City of Houston eGovernment Center ...
* Bienvenidos al Centro Electrónico del Gobierno de la Ciudad de Houston ...
* Houston Oral History: Mayor Louie Welch

### Popular Links

About Houston | Agenda of City Council | Bikeways Program | Birth Certificates | Budget *and* CIP | Campaign Finance Reports Electronic Filing System | Code of Ordinances | Employment / Jobs | Ethics and Conflicts of Interest | Fire Dept. Recruiting | Heavy Trash, Garbage, Recycling Pickup | Houston Hurricane Recovery | Jones Hall | Monthly Financial and Operations Reports | Municipal Channel (HTV) | Police Dept. Recruiting | Pollen & Mold Counts | SAFEClear Program | Volunteer Initiatives Program | Wortham Center | Youth Council / Teen Task Force

### Bravo Awards



### City Employee SpotLight
**Lois Gibson**
Houston Police Dept.



www.bankonhouston.org



www.houstonpowertopeople.com

When the body of a little girl washed up on a Galveston beach, it was Ms. Gibson who gave the girl a face and a personality. Lois, a forensic artist, volunteered to do a rendering of the girl, christened "Baby Grace," for Galveston police because she felt it was important to find out who that little girl was and to bring her killers to justice. And her forensic work was very instrumental doing those two things. More ...

http://www.houstontx.gov/

1/31/2009

City of Houston eGovernment Center



www.HoustonConsumerChoice.com

Home    |    311 City Helpline    |    En Español    |    Contact Us    |    FAQs    |    Privacy Policy

© 2009  copyright , City of Houston. All Rights Reserved

http://www.houstontx.gov/                                                    1/31/2009



HOME    I WANT TO...    GOVERNMENT    RESIDENTS    BUSINESS    DEPARTMENTS    VISITORS

Website [                    ]    [Entire Site ...    ▼] [GO]    My ZIP Code [77002 ▼] [GO]

www.houstontx.gov > About Houston > Tourism

**About Houston**

> Airports
> Annual Events
> Arts & Museums
v Business in Houston
> Calendar of Events
v City Government
> Conventions
> Economy & Trade
> Education
v Exploring Houston
> Facts and Figures
> Health
> Photo Tour of Houston
> Relocating to Houston
> Sports & Recreation
> Tourism

**TOURISM**

Fun in the Bayou City is easy to find. Houston's downtown has been revitalized with numerous clubs, professional sports facilities and musical entertainment that has helped bring nightlife back to downtown. And that's in addition to the rest of the City's attractions, shopping and restaurants to fit all budgets.



Don't know where to begin? Start at the City of Houston Visitors Center at City Hall for hundreds of ideas on enjoying your time in Houston. The staff can help you plan your visit, suggest new things to do with your evenings and weekends (even to City residents) or help you bring your convention or meeting to this exciting city.

You can reach the GHCVB at 1-800-4-HOUSTON or online at www.visithoustontexas.com.

# Houston
## www.visithoustontexas.com
Greater Houston Convention and Visitors Bureau
901 Bagby / First Floor
Houston, TX 77002
1.800.4.HOUSTON

City of Houston eGovernment Center



*LOCATION: Downtown, on the ground floor of City Hall, 901 Bagby.*

Home   |   311 City Helpline   |   En Español   |   Contact Us   |   FAQ   |   Privacy Policy

© 2009 copyright , City of Houston. All Rights Reserved

http://www.houstontx.gov/abouthouston/tourism.html

1/31/2009



| HOME | I WANT TO... | GOVERNMENT | RESIDENTS | BUSINESS | DEPARTMENTS | VISITORS |

Website [          ]   Entire Site ... [▼]   My ZIP Code [77002] [▼]

www.houstontx.gov > About Houston

## About Houston

> Airports

> Annual Events

> Arts & Museums

˅ Business in Houston

> Calendar of Events

˅ City Government

> Conventions

˅ Economy & Trade

> Education

˅ Exploring Houston

> Facts and Figures

> Health

> Photo Tour of Houston

> Relocating to Houston

> Sports & Recreation

> Tourism

### ABOUT HOUSTON

Alive with energy and rich in diversity, Houston is a dynamic mix of imagination, talent and first-class attractions that makes it a world-class city. Home to a vibrant economy, beautiful surroundings and a population full of optimism and spirit, it's no wonder that Houston is a popular international destination.

In this section we provide you with options that will give you a good idea of what Houston is all about. You can also view our Calendar of Events to see more than 400 events in the Houston area throughout the next 12 months.

You can enjoy Houston's outstanding performing and visual arts venues. Try one of the countless restaurants available, offering cuisine in everything from Tex Mex and South American to Middle Eastern and Vietnamese. For sports fans we have local teams representing all major sports. Do some shopping; Houston offers something to fit every budget – from the exclusive shops in Houston's Uptown area to the outlet malls just outside the City.

And that's just the beginning.





Home  |  311 City Helpline  |  En Español  |  Contact Us  |  FAQ  |  Privacy Policy

© 2009 copyright , City of Houston. All Rights Reserved

http://www.houstontx.gov/abouthouston/index.html

1/31/2009



City of Houston eGovernment Center                                     Page 1 of 4



HOME    I WANT TO...    GOVERNMENT    RESIDENTS    BUSINESS    DEPARTMENTS    VISITORS

Website [_____]    Entire Site ... [▼] 🔍    My ZIP Code [77002 ▼] 🔍

Saturday, January 31 - 2009



**Heritage Lanterns in Root Square, Across from Toyota Center**

Welcome to the City of Houston eGovernment Center. Here you can apply for a job, pay traffic tickets and pay water bills, find out about Houston events and the Mayor's Office of Special Events, and learn about the City government that serves you. See our Houston WiFi site. View our homepage photo archive and send us your favorite photo of Houston!

* Mayor's State of the City Address
* 2009 CIP Public Meetings Schedules
* Mayor's 2009 Volunteer Houston Awards Information and Nomination Forms
* Digital TV Conversion Information
* Theater District Parking Online Survey

More City Headlines





Would you like to receive periodic e-mails on important City issues of interest to you and your neighborhood? If so, please *click the graphic above* and register with CitizensNet today. Register Now!

View the CitizensNet Archive.

**January 17, 24, and 31**
**Neighbors Helping Neighbors Ike Cleanup**



The City of Houston's "Neighbors Helping Neighbors" program to assist elderly and physically challenged residents remove Hurricane Ike debris from their backyards to the curb has resumed. The "Neighbors Helping Neighbors" program is seeking volunteers from the community to assist with this effort on the next three consecutive Saturdays: January 17, 24 and 31, 2009.

With over 800 calls for service in this program, we have many homeowners, 60+ years old or physically challenged who can use your help. Many requests are being handled by professionals but



www.houstonhurricanerecovery.org



City of Houston
Hurricane Ike Recovery Guide

(Guide updated Tuesday, January 27, 2009 at 3:00 p.m.)

http://www.houstontx.gov/                                              1/31/2009

City of Houston eGovernment Center

Page 2 of 4

volunteers can complete the job by bagging, sweeping and moving the debris to the curb for pickup.

More ...

**January 21 to February 28**
**Mayor's New Year, New You Challenge**



The Mayor's New Year New You Challenge is a five week wellness program which aims to encourage and motivate Houstonians of all ages and abilities to engage in wellness activities during the New Year. Specifically, the challenge will raise participants' awareness of their daily physical activities, encourage healthy eating and routine exercise in a fun and supportive environment. More ...

**February 11**
**Housing and Employment Resources Expo (HERE) for People With Disabilities**



This unique event will provide an opportunity for people with disabilities to meet with prospective employers, as well as representatives from various housing related entities and other resource agencies. Participants will be able to participate in hands-on workshops pertaining to housing and employment issues and receive important information at booths hosted by community organizations, employers, and sponsors. More ...



**Get Moving Houston**

Mayor Bill White, Houston business heavyweights step up to the plate to launch new citywide wellness initiative. Houston Wellness Association seeks to make Houston



A roofing contractor and/or citizens can call 713.837.ROOF to get information on the program or view the online application.



**Gulf Coast Ike Relief Fund**
c/o The Greater Houston Community Foundation
4550 Post Oak Place, Suite 100
Houston, TX 77027
www.ghcf.org

**Hurricane Ike Disaster Proclamations**



  

   GreenHoustonTX.gov

**Don't Stand In Line**
Online Services is your one-stop shop for online city services and links that offer e-Gov services. Use the drop down to select the service you require.



**Select Online Service Here ...**

http://www.houstontx.gov/

1/31/2009

City of Houston eGovernment Center



"the model city for wellness".
More...




**Houston Forecast**

**57°F**
Fair

Humidity: 28%
Wind: W at 8 mph
Wind Chill: 55°F

Weather by City,ST or Zip:

City, ST/Zip    Go



**Calendar of Events**

| Dec | January 2009 | | | | | Feb |
|-----|-----|-----|-----|-----|-----|-----|
| All | S | M | T | W | T | F | S |
| | | | | | 1 | 2 | 3 |
| | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| | 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| | 25 | 26 | 27 | 28 | 29 | 30 | 31 |

**Mayor Bill White**



* Welcome to the City of Houston eGovernment Center ...
* Bienvenidos al Centro Electrónico del Gobierno de la Ciudad de Houston ...
* Houston Oral History: Mayor Louie Welch

**Popular Links**

About Houston | Agenda of City Council | Bikeways Program | Birth Certificates | Budget *and* CIP | Campaign Finance Reports Electronic Filing System | Code of Ordinances | Employment / Jobs | Ethics and Conflicts of Interest | Fire Dept. Recruiting | Heavy Trash, Garbage, Recycling Pickup | Houston Hurricane Recovery | Jones Hall | Monthly Financial and Operations Reports | Municipal Channel (HTV) | Police Dept. Recruiting | Pollen & Mold Counts | SAFEClear Program | Volunteer Initiatives Program | Wortham Center | Youth Council / Teen Task Force

**Bravo Awards**



**City Employee SpotLight**
**Lois Gibson**
Houston Police Dept.





www.bankonhouston.org



www.houstonpowertopeople.com

When the body of a little girl washed up on a Galveston beach, it was Ms. Gibson who gave the girl a face and a personality. Lois, a forensic artist, volunteered to do a rendering of the girl, christened "Baby Grace," for Galveston police because she felt it was important to find out who that little girl was and to bring her killers to justice. And her forensic work was very instrumental doing those two things. More ...

City of Houston eGovernment Center



www.HoustonConsumerChoice.com

Home    |    311 City Helpline    |    En Español    |    Contact Us    |    FAQs    |    Privacy Policy

© 2009  copyright , City of Houston. All Rights Reserved

City of Houston eGovernment Center                                          Page 1 of 2



HOME    I WANT TO...    GOVERNMENT    RESIDENTS    BUSINESS    DEPARTMENTS    VISITORS

Website [          ]    Entire Site ... [▼] [GO]    My ZIP Code [77002 ▼] [GO]

www.houstontx.gov > About Houston > Tourism

**About Houston**

› Airports

› Annual Events

› Arts & Museums

▾ Business in Houston

› Calendar of Events

▾ City Government

› Conventions

› Economy & Trade

› Education

▾ Exploring Houston

› Facts and Figures

› Health

› Photo Tour of Houston

› Relocating to Houston

› Sports & Recreation

› Tourism

**TOURISM**

Fun in the Bayou City is easy to find. Houston's downtown has been revitalized with numerous clubs, professional sports facilities and musical entertainment that has helped bring nightlife back to downtown. And that's in addition to the rest of the City's attractions, shopping and restaurants to fit all budgets.

Don't know where to begin? Start at the City of Houston Visitors Center at City Hall for hundreds of ideas on enjoying your time in Houston. The staff can help you plan your visit, suggest new things to do with your evenings and weekends (even to City residents) or help you bring your convention or meeting to this exciting city.

You can reach the GHCVB at 1-800-4-HOUSTON or online at www.visithoustontexas.com.



# Houston

## www.visithoustontexas.com

Greater Houston Convention and Visitors Bureau
901 Bagby / First Floor
Houston, TX 77002
1.800.4.HOUSTON

http://www.houstontx.gov/abouthouston/tourism.html                         1/31/2009



*LOCATION: Downtown, on the ground floor of City Hall, 901 Bagby.*

Home   |   311 City Helpline   |   En Español   |        Contact Us        |   FAQ   |   Privacy Policy

© 2009 copyright , City of Houston. All Rights Reserved

City of Houston eGovernment Center                                                    Page 1 of 1



HOME | I WANT TO... | GOVERNMENT | RESIDENTS | BUSINESS | DEPARTMENTS | VISITORS

Website [          ]   [Entire Site ...  ▼] [GO]   My ZIP Code [77002 ▼] [GO]

www.houstontx.gov > About Houston

**About Houston**

- > Airports
- > Annual Events
- > Arts & Museums
- ∨ Business in Houston
- > Calendar of Events
- ∨ City Government
- > Conventions
- > Economy & Trade
- > Education
- ∨ Exploring Houston
- > Facts and Figures
- > Health
- > Photo Tour of Houston
- > Relocating to Houston
- > Sports & Recreation
- > Tourism

## ABOUT HOUSTON

Alive with energy and rich in diversity, Houston is a dynamic mix of imagination, talent and first-class attractions that makes it a world-class city. Home to a vibrant economy, beautiful surroundings and a population full of optimism and spirit, it's no wonder that Houston is a popular international destination.

In this section we provide you with options that will give you a good idea of what Houston is all about. You can also view our Calendar of Events to see more than 400 events in the Houston area throughout the next 12 months.

You can enjoy Houston's outstanding performing and visual arts venues. Try one of the countless restaurants available, offering cuisine in everything from Tex Mex and South American to Middle Eastern and Vietnamese. For sports fans we have local teams representing all major sports. Do some shopping; Houston offers something to fit every budget – from the exclusive shops in Houston's Uptown area to the outlet malls just outside the City.

And that's just the beginning.




Home  |  311 City Helpline  |  En Español  |  Contact Us  |  FAQ  |  Privacy Policy

© 2009 copyright , City of Houston. All Rights Reserved

http://www.houstontx.gov/abouthouston/index.html                              1/31/2009

<u>IN THE APPLICATION</u>

Please include the following disclaimer:

"No claim is made to the exclusive right to use "CITY OF HOUSTON TEXAS" apart from the mark as shown."

Please amend the description of the mark to read as follows:

"The mark consists of a circular seal having a rope pattern contour with a design of a plow, a locomotive and a five pointed Texas star, and the wording CITY OF HOUSTON TEXAS within the seal and a fleur de lis on each side of the term TEXAS.".

Please amend the descriptions of services to read as follows:

"Class 035: municipal services, namely, promoting trade, commerce, economic development and tourism; city administrative services, namely, business administration and management of municipality services.

Class 039: municipal services, namely, providing public utilities services."

<u>RESPONSE</u>

Applicant is amending the application as indicated herein.

Applicant appreciates the Examining Attorney's indication that there are no similar registered or pending marks that would bar registration for Applicant's mark.

The Examining Attorney alleges that the previously submitted specimen is not acceptable because it does not show the applied-for mark used in connection with the services of Class 39, namely, providing public utilities services.

Applicant respectfully disagrees with this allegation. A copy of the previously submitted specimen, which comprises screenshots from the City of Houston's official Internet website, is

*HOU 406,643,172v2*

-2-

# UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO:**     77/660948

**MARK:** CITY OF HOUSTON TEXAS

**CORRESPONDENT ADDRESS:**
    MARK G. CHRETIEN
    GREENBERG TRAURIG LLP
    1000 LOUISIANA ST STE 1700
    HOUSTON, TX 77002-5005

**APPLICANT:**     City of Houston

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
    116673.01040
**CORRESPONDENT E-MAIL ADDRESS:**

# *77660948*

**RESPOND TO THIS ACTION:**
http://www.uspto.gov/teas/eTEASpageD.htm

**GENERAL TRADEMARK INFORMATION:**
http://www.uspto.gov/main/trademarks.htm

# OFFICE ACTION

TO AVOID ABANDONMENT, THE OFFICE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF THE ISSUE/MAILING DATE.

**ISSUE/MAILING DATE:**

Upon further review, the Office has determined the following:

**Refusal – Governmental Insignia**

Registration is refused because the applied-for mark is a governmental insignia for the City of Houston. Trademark Act Section 2(b), 15 U.S.C. §1052(b); *see* TMEP §1204. Trademark Act Section 2(b) bars registration of marks that include the flag, coat of arms, or other insignia of the United States, any state or municipality, or any foreign nation. TMEP §1204.

## 1204.02(a) Designs that are Insignia Under §2(b) Must Be Refused

Flags and coats of arms are specific designs formally adopted to serve as emblems of governmental authority. The wording "other insignia" should not be interpreted broadly, but should be considered to include only those emblems and devices that also represent governmental authority and that are of the same general class and character as flags and coats of arms.

The following are insignia of the United States for purposes of §2(b):

· Great Seal of the United States

· Presidential Seal

· **Seals of Government Agencies**

The Trademark Trial and Appeal Board has construed the statutory language as follows:

[T]he wording "or other insignia of the United States" must be restricted in its application to insignia of the same general class as "the flag or coats of arms" of the United States. Since both the flag and coat of arms are emblems of national authority it seems evident that other insignia of national authority such as the Great Seal of the United States, the Presidential Seal, and seals of government departments would be equally prohibited registration under Section 2(b). On the other hand, it appears equally evident that department insignia which are merely used to identify a service or facility of the Government are not insignia of national authority and that they therefore do not fall within the general prohibitions of this section of the Statute.

In re U.S. Department of the Interior, 142 USPQ 506, 507 (TTAB 1964) (logo comprising the words "NATIONAL PARK SERVICE" and "Department of the Interior," with depiction of trees, mountains, and a buffalo, surrounded by an arrowhead design, held not to be an insignia of the United States). The Trademark Trial and Appeal Board recently reaffirmed this interpretation in In re Peter S. Herrick, P.A., 91 USPQ2d 1505 (TTAB June 26, 2009), by affirming the §2(b) refusal since applicant's seal design was virtually identical to the seal used by the United States Department of the Treasury.

The specimens submitted by the applicant show the proposed mark is used as the governmental insignia throughout the City of Houston's official website. Please see attached web pages from the City of Houston's official website. The fact that the applicant is the City of Houston does not overcome the refusal.

Trademark Act Section 2(b) is an absolute bar to registration on the Principal and Supplemental Registers. Trademark Act Sections 2(b) and 23(a), (c), 15 U.S.C. §§1052(b), 1091(a), (c); see TMEP §§1204, 1204.04(a).

Although the trademark examining attorney has refused registration, applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

/Sally Shih/
Sally Shih
Trademark Examining Attorney
Law Office 106
USPTO





convey a different message about what ordinary citizens can do to combat global warming. The five-foot diameter, seven-foot-tall globes will be decorated by local, national and international artists. More ...

**December 31**
**Texas Bowl**

Featuring Missouri vs. Navy, The 2009 Texas bowl will be played on Thursday, December 31 at 2:30 p.m. CST at Reliant Stadium. The game will be televised nationally on ESPN. Tickets are available at all TicketMaster outlets, online at TicketMaster.com and by phone at 832-687-2390. More ...

**January 17**
**Chevron Houston Marathon**

Be a part of Houston's largest single-day sporting event. Combined with the Aramco Houston Half Marathon, the Houston Press / Smart Financial Credit Union 5K and the Texas Children's Hospital Kids Fun Run, more then 20,000 participants, 200,000 spectators and 5,000 volunteers will take to the streets. Begins and ends at George R. Brown Convention Center. More ...

**The Purchasing Catalog**



**Get Moving Houston**



**Register for CitizensNet**

Would you like to receive periodic e-mails on important City issues of interest to you and your neighborhood? If so, please *click the graphic above* and register with CitizensNet today. Register Now!

View the CitizensNet Archive.

*Special Events Permits*
— Parades & Street Functions
— General Event Permits

**Pay Water Bill Online**

**Online Services**

**Don't Stand In Line**
Online Services is your one-stop shop for online city services and links that offer e-Gov services. Use the drop down to select the service you require.

**Select Online Service Here ...**

**Green Houston**

http://www.houstontx.gov/    12/17/2009 11:34:02 AM





www.houstoncitysurplus.org

### Calendar of Events




**Traffic Map**

| Calendar of Events | | | | | | | |
|---|---|---|---|---|---|---|---|
| M | S | M | T | W | T | F | S |
| > | 28 | 29 | 30 | 1 | 2 | 3 | 4 |
| > | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| > | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| > | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| > | 26 | 27 | 28 | 29 | 30 | 31 | |
| > | | | | | | | |

#### Popular Links

About Houston | Agenda of City Council | Bikeways Program | Birth Certificates | budget and CIP | Campaign Finance Reports Electronic Filing System | Code of Ordinances | Employment / Jobs | Ethics and Conflicts of Interest | Fire Dept. Recruiting | Jones Hall | Monthly Financial and Operations Reports | Municipal Channel (HTV) | Police Dept. Recruiting | Pollen & Mold Counts | SAFEClear Program | Trash Pickup | Volunteer Initiatives Program | Wortham Center | Youth Council / Teen Task Force

### Inside The City of Houston

#### Mayor Bill White



- Welcome to the City of Houston eGovernment Center ...
- Bienvenidos al Centro Electrónico del Gobierno de la Ciudad de Houston ...
- Houston Oral History: Mayor Louie Welch
- Houston Mayors Photo Gallery

#### Bravo Awards



**City Employee Spotlight**

**Art Zehnder**
Convention and Entertainment Facilities Department

Art Zehnder is the highly regarded director of sales for the convention center, but it was in the midst of Hurricane Ike that his star shined brightest. Going non-stop for 10 days, he inspired co-workers and volunteers to provide top-notch service and comfort to those who lost everything they had. For those people, the cavernous George R. Brown Convention Center was home as a Red Cross Staging Area. More ...

Mobile | 311 City Helpline | En Español | Contact Us | FAQs | Privacy Policy

© 2009 Copyright. City of Houston. All Rights Reserved.



http://www.houstontx.gov/departments.html      12/17/2009 11:36:34 AM





http://www.houstontx.gov/departments.html     12/17/2009 11:35:34 AM



**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**TRADEMARK EXAMINING DIVISION**

| | | | | |
|---|---|---|---|---|
| Mark: | CITY OF HOUSTON TEXAS | ) | | |
| | | ) | | |
| Classes: | 035; 039 | ) | Trademark Examining Attorney: | |
| | | ) | Sally Shih | |
| Applicant: | City of Houston | ) | | |
| | | ) | Law Office:   106 | |
| Serial No.: | 77/660,948 | ) | | |
| | | ) | | |
| Filed: | February 1, 2009 | ) | Attorney Docket No.: | |
| | | | 116673.010400 | |

### RESPONSE TO OFFICE ACTION

Commissioner for Trademarks
P. O. Box 1451
Alexandria, Virginia 22313-1451

CERTIFICATE OF MAILING
37 C.F.R. § 1.8

I hereby certify that this correspondence is being deposited with the U.S. Postal Service, First Class Postage prepaid, the envelope addressed to: Commissioner for Trademarks, P. O. Box 1451, Alexandria, Virginia 22313-1451, on the date below.

6-16-2010                    *Linda Guice*
Date                          Linda Guice

Dear Madame:

In response to the Office Action dated December 17, 2009, the City Of Houston (hereafter "Applicant," "City of Houston" or "City") files the following Response. Reconsideration of this application is respectfully requested.

### REFUSAL TO REGISTER

Registration has been refused for Applicant's mark because Trademark Act Section 2(b) bars registration of marks that include the flag, coat of arms, or other insignia of the United States, any state or municipality, or any foreign nation.

06-18-2010

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #21

*HOU 408,976,995v2*

[T]he wording "or other insignia of the United States" must be restricted in its application to insignia of the same general class as "the flag or coats of arms" of the United States. Since both the flag and coat of arms are emblems of national authority it seems evident that other insignia of national authority such as the Great Seal of the United States, the Presidential Seal, and seals of government departments would be equally prohibited registration under Section 2(b). On the other hand, it appears equally evident that department insignia which are merely used to identify a service or facility of the Government are not insignia of national authority and that they therefore do not fall within the general prohibitions of this section of the Statute.

*In re U.S. Department of the Interior*, 142 USPQ 506, 507 (TTAB 1964).

According to TMEP 1204.02(a), the statute "does not list any exceptions that would allow for countries, states, or municipalities to register *their own* flags or insignia, and applications for marks that contain flags, coats of arms, or government insignia, even if filed by the relevant state, country, or municipality, must be refused." (italics and underlining added).

The TMEP does not cite any case law to support the construction of the statute contained in TMEP 1204.02(a).

<u>RESPONSE</u>

Applicant respectfully submits that Trademark Act Section 2(b) should not prevent the City of Houston from registering its City Seal mark. The statutory language should be construed to allow a state, country, or municipality to register its own insignia, including a city's official

seal, to identify services that the state, country, or municipality provides to its citizens under the insignia.

    1.    <u>Statutory Interpretation.</u>

       Section 2(b) is silent as to whether or not countries, states, or municipalities may register their own insignia.   Applicant respectfully submits that one should look to the history surrounding the statute's enactment to determine how the statute should be interpreted.

       The original statute was enacted in 1905. *See* 33 Stat. 725 (1905)(Exhibit B).  Section 5 of the original statute deals with registration of "insignia." *Id.*  The relevant wording in Section 5 of the original statute is virtually identical to the wording of present day Section 2(b).

| Original Statute (1905) | Present Day Statute (2010) |
|---|---|
| "That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark --- Consists of or comprises the flag or coat of arms or other insignia of the United States, or any simulation thereof, or of any State or municipality, or of any foreign nation … " | "No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it --- Consists of or comprises the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof..." |

       Section 5 was the earliest flag protection law, and was enacted to prevent desecration of the flag, coat of arms or related symbols by halting the registration of commercial trademarks

HOU 406,976,995v2

that contained representations of those marks. *See Flags and Seals of Texas*, 33 S. Tex. L. Rev. 215, 238 n. 73.5 (1992) (Exhibit C).

One source describes the thinking of the time as follows:

"The use of flags in commercial advertising accelerated as the cult of the flag grew. Those with products to sell recognized the increased attention and reverence the flag received and moved to capitalize on its power. Flag business cards became fashionable; printed advertisements displayed flags with a wide variety of nonrelated products; and flag-printed paraphernalia, expanding on the ideas for souvenirs that marked the celebration of the centennial, demonstrated that entrepreneurs and businessmen believed patriotic responses to the flag would encourage consumers to buy their products....

There was no legal restraint to control with which products the flag should be associated, so although it appeared in national advertisements for products such as cod liver oil and sarsaparilla, the image was also used commercially to sell whiskey, lager beer and tobacco....

[A] hereditary society committee, disturbed by what they saw as desecration of a sacred symbol for private economic gain, complied a list of offensive products on sale in 1896 that fit this category; the aforementioned partisan banners and posters, patriotic envelops, awnings, neckties, hosiery, towels, napkins, handkerchiefs, minstrel coats, ballet skirts, boxing trunks, clown costumes,

professional bicyclist apparel, picture mats, hammocks, pillows, cushions for yachts and chairs, quilts, equine fly nets and dog blankets.

*See Scot M. Guenter, The American Flag, 1777-1924 Cultural Shifts from Creation to Codification* at 137-39 (1990)(Exhibit D).

Much of the sentiment behind the enactment of the earliest form of this statute was to prevent private interests from using the flag and other government insignia for personal commercial gain. The original statute was <u>not</u> intended to prevent the relevant states, countries, or municipalities from protecting their own insignia. Instead, the purpose was the exact opposite, to protect the states, countries, or municipalities from having their insignia misappropriated or used for improper commercial purposes by private individuals or entities.

These same interests are relevant to the City of Houston over 100 years after the enactment of the statute. The City provides a wide range of municipal services to its citizens. The City uses its Seal to identify itself as the source of these municipal services. The registration of the City's Seal would allow the City to prevent the unauthorized use of its Seal by third-parties. The unauthorized use of the City's Seal by a third-party would cause confusion and/or mislead consumers as to the origin, sponsorship, or approval by the City of other parties' goods, services, or commercial activities.

For example, imagine if a private party was to advertise and provide sewage and water services using the City Seal, without the permission of the City. Some citizens might believe that this other party is somehow sponsored or authorized by the City to provide these services. This could very well result in consumer confusion, and the results could be disasterous. To

6

prevent this from occurring, the City should be able to "vouch for" the quality of essential public utility services provided under its City Seal.

Unfortunately, the current interpretation of Section 2(b) of the statute hinders the City's ability to provide this vital consumer protection to its citizens. The City cannot obtain a federal registration for its official seal and cannot take advantage of all the protections that such a registration can provide, such as a prima facie indication that the City is the exclusive source of the municipal services for which the mark is registered. In this regard, the present statutory interpretation prevents the interests of justice from being served and should be reconsidered as a matter of public policy.

2.    The Insignia is Being Registered For Use In Connection with Municipal Services Provided by the Applicant City.

The case law indicates that the language in Section 2(b) is to be construed narrowly and should be "restricted in its application" to only those insignia that are being used as "emblems of national authority." *In re U.S. Department of the Interior*, 142 USPQ at 506. In contrast, insignia which are "merely used to identify a service or facility of the Government" do not fall within the general prohibitions of the statute. *Id.*

The City of Houston is not seeking to register its City Seal as an "emblem of authority." Instead, it is seeking to register the City Seal in connection with specific municipal services that it provides to its citizens via its various City departments. Examples of these services include providing public utility services such as water and sewage, and promotion of trade, commerce, economic development and tourism. These permitted uses do not fall within the narrow prohibitions of the statute set forth in the case law.

HOU 406,976,995v2

3.    <u>Third Party Registrations for City Seals.</u>

Applicant has searched the USPTO database and found the following representative examples of federal registrations that other cities have obtained for their official city seals:

CITY OF FREDERICK FOUNDED 1745, U.S. Reg. No. 2,642,489

CHESTER PENNSYLVANIA SETTLED IN 1644, U.S. Reg. No. 2,630,723

CITY OF SCOTTSDALE ARIZONA THE WEST'S MOST WESTERN TOWN, U.S. Reg. No. 3,263,901

CITY OF MIAMISBURG OHIO'S STAR CITY, U.S. Reg. No. 2,522,124

CITY OF ALISO VIEJO CALIFORNIA JULY 2001, U.S. Reg. No. 3,343,032

PRIDE IN THE PAST - THE ORIGINAL WASHINGTON - FAITH IN THE FUTURE 1776 WASHINGTON NORTH CAROLINA, U.S. Reg. No. 3,571,997

CITY OF FULLERTON CALIFORNIA, U.S. Reg. No. 2,877,383

CITY OF CORAL GABLES FLORIDA, U.S. Reg. No. 3,048,803

CITY OF GREENSBORO, NORTH CAROLINA 1808, U.S. Reg. No. 3,217,400

CITY OF PERRYSBURG 1816, U.S. Reg. No. 2,868,733

SEAL OF THE CITY OF OKLAHOMA CITY, U.S. Reg. No. 3,625,134

CITY · OF · VIRGINIA · BEACH · VIRGINIA LANDMARKS OF OUR NATION'S BEGINNING, U.S. Reg. No. 3,697,564

CITY OF ROSSFORD, OHIO ... U.S.A. ... 1898 1971, U.S. Reg. No. 3,739,212

Applicant respectfully notes that at least one of these registrations, U.S. Reg. No. 3,739,212 for CITY OF ROSSFORD, OHIO ... U.S.A. ... 1898 1971, was granted on January 19,

8

2010, which is subsequent to the date of Applicant's Office Action with a refusal to register. Applicant requests clarification as to how these other city seals were deemed registrable in view of the statute cited against Applicant.

In view of this Response, Applicant respectfully requests that the refusal to register be withdrawn and a Certificate of Registration be issued.

Respectfully submitted,

Date: June 16, 2010

Mark G. Chretien
Ben D. Tobor
GREENBERG TRAURIG LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Phone: (713) 374-3568
Fax: (713) 754-7568
Attorneys for Applicant,
City of Houston

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)
### OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION

**APPLICATION SERIAL NO.**    77/660948

**MARK**: CITY OF HOUSTON TEXAS

**CORRESPONDENT ADDRESS:**
    MARK G. CHRETIEN
    GREENBERG TRAURIG LLP
    1000 LOUISIANA ST STE 1700
    HOUSTON, TX 77002

    **APPLICANT:**    City of Houston

    **CORRESPONDENT'S REFERENCE/DOCKET
NO**:
    116673.01040
    **CORRESPONDENT E-MAIL ADDRESS:**

# *77660948*

**CLICK HERE TO RESPOND TO THIS LETTER:**
**http://www.uspto.gov/teas/eTEASpageD.htm**

# OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER
TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST
RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE
ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE:**

**THIS IS A FINAL ACTION.**

This Office action is in response to applicant's communication filed on 6/16/2010.   The applicant has
argued against the Section 2(b) governmental insignia refusal.  However, the argument has been rejected.

The following refusal is now made FINAL:  Section 2(b) governmental insignia refusal.  *See* 37 C.F.R.
§2.64(a).

**Final Refusal – Governmental Insignia**

Registration is refused because the applied-for mark includes a governmental insignia of the City of Houston. Trademark Act Section 2(b), 15 U.S.C. §1052(b); *see* TMEP §1204. Trademark Act Section 2(b) bars registration of marks that include the flag, coat of arms, or other insignia of the United States, any state or municipality, or any foreign nation. TMEP §1204.

The previously provided evidence from the official website of the City of Houston shows that the applied-for mark is the official governmental insignia for the City of Houston.

The applicant argued the history and "statutory interpretation" should not prevent registration of insignia of municipality. However, on the face of the statute, Section 2(b) bars registration of insignia of any state or municipality. Section 1204.02 specifically indicated "Seals of Government Agencies" as examples of insignia of the United States for purposes of Section 2(b). Please see TMEP sections below or http://atlas.uspto.gov:90/tmdb/tmep/1200.htm#_T120402.

## 1204.02 Government Insignia
## 1204.02(a) Designs that are Insignia Under §2(b) Must Be Refused

Flags and coats of arms are specific designs formally adopted to serve as emblems of governmental authority. The wording "other insignia" should not be interpreted broadly, but should be considered to include only those emblems and devices that also represent governmental authority and that are of the same general class and character as flags and coats of arms.

The following are insignia of the United States for purposes of §2(b):

· Great Seal of the United States

· Presidential Seal

· Seals of Government Agencies

The Trademark Trial and Appeal Board has construed the statutory language as follows:

[T]he wording "or other insignia of the United States" must be restricted in its application to insignia of the same general class as "the flag or coats of arms" of the United States. Since both the flag and coat of arms are emblems of national authority it seems evident that other insignia of national authority such as the Great Seal of the United States, the Presidential Seal, and seals of government departments would be equally prohibited registration under Section 2(b). On the other hand, it appears equally evident that department insignia which are merely used to identify a service or facility of the Government are not insignia of national authority and that they therefore do not fall within the general prohibitions of this section of the Statute.

*In re U.S. Department of the Interior,* 142 USPQ 506, 507 (TTAB 1964) (logo comprising the words "NATIONAL PARK SERVICE" and "Department of the Interior," with depiction of trees, mountains, and a buffalo, surrounded by an arrowhead design, held not to be an insignia of the United States). The Trademark Trial and Appeal Board recently reaffirmed this interpretation in *In re Peter S. Herrick, P.A.,* 91 USPQ2d 1505 (TTAB June 26, 2009), by affirming the §2(b) refusal since applicant's seal design was virtually identical to the seal used by the United States Department of the Treasury.

## 1204.02(b) Examples of Insignia That Should Be Refused

*Examples*: The following are examples of insignia that should be refused under §2(b):

*Great Seal of the United States*

*Seal of The President of The United States*

*The Official Seal of a Government Agency*

The applicant does not dispute that the proposed mark is an insignia for the City of Houston. The applicant argued instead is that an exception should be made because the City of Houston is the applicant. However, Section 2(b) does not provide for any exceptions. The fact that the applicant is the City of Houston does not overcome the refusal.

Trademark Act Section 2(b) is an absolute bar to registration on the Principal and Supplemental Registers. Trademark Act Sections 2(b) and 23(a), (c), 15 U.S.C. §§1052(b), 1091(a), (c); *see* TMEP §§1204, 1204.04(a).

A refusal under Trademark Act Section 2(b) differs from a refusal of a national symbol under Section 2(a) because Section 2(b) requires evidence only that the mark includes the flag, coat of arms or other insignia of the United States, any state or municipality or any foreign nation. TMEP §1204. A Section 2(a) refusal of a national symbol, on the other hand, requires not only evidence that the matter in the mark is a national symbol, but also evidence that the mark is disparaging of or falsely suggests a connection with the country to which the symbol refers. *See* TMEP §§1203.03, 1203.03(b), 1204.

Accordingly, the refusal made under Section 2(b) is maintained and made FINAL.

**Proper Response to Final Action**

If applicant does not respond within six months of the mailing date of this final Office action, the application will be abandoned. 15 U.S.C. §1062(b); 37 C.F.R. §2.65(a). Applicant may respond to this final Office action by:

(1) Submitting a response that fully satisfies all outstanding requirements, if feasible; and/or

(2) Filing an appeal to the Trademark Trial and Appeal Board, with an appeal fee of $100 per class.

37 C.F.R. §§2.6(a)(18), 2.64(a); TBMP ch. 1200; TMEP §714.04.

In certain rare circumstances, a petition to the Director may be filed pursuant to 37 C.F.R. §2.63(b)(2) to review a final Office action that is limited to procedural issues. 37 C.F.R. §2.64(a); TMEP §714.04; *see*

37 C.F.R. §2.146(b); TBMP §1201.05; TMEP §1704 (explaining petitionable matters). The petition fee is $100. 37 C.F.R. §2.6(a)(15).

/Sally Shih/
Sally Shih
Trademark Examining Attorney
Law Office 106
USPTO
(tel) 571-272-9712
(fax) 571-273-9106

**TO RESPOND TO THIS LETTER:** Use the Trademark Electronic Application System (TEAS) response form at http://teasroa.uspto.gov/roa/. Please wait 48-72 hours from the issue/mailing date before using TEAS, to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov.

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using Trademark Applications and Registrations Retrieval (TARR) at http://tarr.uspto.gov/. Please keep a copy of the complete TARR screen. If TARR shows no change for more than six months, call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/teas/eTEASpageE.htm.

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

ESTTA Tracking number: **ESTTA388524**

Filing date: **01/14/2011**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Application Serial No. | 77660948 |
|---|---|
| Applicant | City of Houston |

# Notice of Appeal

Notice is hereby given that City of Houston appeals to the Trademark Trial and Appeal Board the refusal to register the mark depicted in Application Serial No. 77660948.

The refusal to register has been appealed as to the following classes of goods/services:

- Class 035. First Use: 2009/02/01 First Use In Commerce: 2009/02/01
  All goods and services in the class are appealed, namely: municipal services, namely, promoting trade, commerce, economic development and tourism; city administrative services, namely, business administration and management of municipality services

- Class 039. First Use: 2009/02/01 First Use In Commerce: 2009/02/01
  All goods and services in the class are appealed, namely: municipal services, namely, providing public utilities services

Respectfully submitted,
/mgc/
01/14/2011
**MARK G. CHRETIEN**
**GREENBERG TRAURIG LLP**
**1000 LOUISIANA ST STE 1700**
**HOUSTON, TX 77002**
**UNITED STATES**
**chretienm@gtlaw.com, laipmail@gtlaw.com**
**713-374-3528**

to allow a state, country, or municipality to register its own insignia, including a city's official seal, to identify services that the state, country, or municipality provides to its citizens under the insignia.

      1.    <u>Statutory Interpretation.</u>

Trademark Act Section 2(b) is silent as to whether or not countries, states, or municipalities may register their own insignia. Applicant respectfully submits that one should look to the history surrounding the statute's enactment to determine how the "silent" statute should be properly interpreted in this context.

The original statute was enacted in 1905. *See* 33 Stat. 725 (1905)(Exhibit B). Section 5 of the original statute deals with registration of "insignia." *Id.* The relevant wording in Section 5 of the original statute is virtually identical to the wording of present day Section 2(b).

| Original Statute - Section 5 (1905) | Present Day Statute - Section 2(b) (2010) |
|---|---|
| "That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark --- Consists of or comprises the flag or coat of arms or other insignia of the United States, or any simulation thereof, or of any State or municipality, or of any foreign nation … " | "No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it --- Consists of or comprises the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof..." |

# UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

**APPLICATION SERIAL NO.**    77660948

**MARK**: CITY OF HOUSTON TEXAS

**CORRESPONDENT ADDRESS**:
    MARK G CHRETIEN
    GREENBERG TRAURIG LLP
    1000 LOUISIANA ST  SUITE 1700
    HOUSTON, TX 77002



**GENERAL TRADEMARK INFORMATION:**
http://www.uspto.gov/main/trademarks.htm

**TTAB INFORMATION:**
http://www.uspto.gov/web/offices/dcom/ttab/index.html

**APPLICANT**:       City of Houston

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
   116673.01040
**CORRESPONDENT E-MAIL ADDRESS**:

## EXAMINING ATTORNEY'S APPEAL BRIEF

### I.  STATEMENT OF THE CASE

The applicant, on January 18, 2011, appealed the examining attorney's final refusal to register the proposed mark, CITY OF HOUSTON TEXAS and seal design, for municipal services, namely, promoting trade, commerce, economic development and tourism; city administrative services, namely, business administration and management of municipality services in International Class 35; and municipal services, namely, providing public utilities services in International Class 39.  Registration was refused pursuant to Trademark Act Section 2(b), 15 U.S.C. Section 1052(b), on the ground that the proposed mark is an insignia of a municipality.  The examining attorney respectfully requests that the refusal be affirmed.

### II.  FACTS

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

---

Applicant:      City of Houston

Serial No.:     77/660,948

Filing Date:    February 1, 2009

Mark:           CITY OF HOUSTON TEXAS

---

# APPLICANT'S REPLY BRIEF

Ben D. Tobor
Mark G. Chretien
Greenberg Traurig, LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77021
Telephone: 713.374.3528
Attorneys for Applicant

The City of Houston ("Applicant") appeals from the Final Office Action dated July 21, 2010, refusing Applicant's U.S. Application Serial No. 77/660,948 for the mark CITY OF HOUSTON TEXAS.

Applicant filed its Appeal Brief on January 18, 2011.   The Examining Attorney filed an Examining Attorney's Appeal Brief on April 20, 2011.

This Reply Brief is being filed within twenty (20) days of the filing of the Examining Attorney's Appeal Brief, as required under 37 CFR §2.142(b)(1).

Applicant hereby reiterates the arguments presented in its Appeal Brief.  Applicant also hereby address certain additional issues raised in the Examining Attorney's Appeal Brief.

1.    <u>The statute should not be construed to bar a government agency from registering its own insignia.</u>

Applicant recognizes that Section 2(b) does not list, on its face, an express exception that would allow a municipality to register its own government insignia.  However, it is important to note that the statute was enacted in 1905.  At that time, it was unclear whether a government entity could own a trademark registration of any kind.  It was almost sixty (60) years later before municipalities were deemed capable of registering their own marks.  *See In re U.S. Department of the Interior*, 142 USPQ 506 (TTAB 1964)("the granting of trademark and service mark registrations to state and governmental agencies does not appear to be contrary to the established policies of the Patent Office...").  Applicant respectfully submits that Section 2(b) be construed in this updated, broader context, whereby municipalities are understood to be proper applicants within the meaning of the Trademark Act.  *Id.*

**United States Patent and Trademark Office**
**Trademark Trial and Appeal Board**
P.O. Box 1451
Alexandria, VA 22313-1451

Date:      May 9, 2011

To:        Sally Shih
           Trademark Examining Attorney
           Law Office 106

From:      Rochelle L Adams
           Paralegal Specialist,
           Trademark Trial and Appeal Board

Subject:   Reply Brief for Application Serial No. 77660948


    Applicant has filed its reply brief in the above-
identified appeal which is available for viewing using
TTABVue.

    If the Trademark Examining Attorney is persuaded by the
arguments contained in the reply brief that applicant's mark
is registrable, and decides to allow the application, the
Trademark Examining Attorney may approve the application for
publication, or in the case of an application on the
Supplemental Register, for registration.   In the absence of
such, the Board will go forward with the appeal and issue a
decision on the merits in due course.

THIS DECISION IS A
PRECEDENT OF THE TTAB

Mailed: January 18, 2012

### UNITED STATES PATENT AND TRADEMARK OFFICE
### Trademark Trial and Appeal Board

———

In re City of Houston

———

Serial No. 77660948
Filed February 1, 2009

———

Mark G. Chretien and Ben D. Tobor of Greenberg Traurig LLP for applicant.

Sally Shih, Examining Attorney, Law Office 106, Mary I. Sparrow, Managing Attorney.

———

**Before Kuhlke, Cataldo, and Mermelstein, Administrative Trademark Judges.**

**Opinion by Mermelstein, Administrative Trademark Judge:**

The City of Houston, Texas seeks registration on the Principal Register of the following mark:



for "municipal services, namely, promoting trade, commerce, economic development and tourism; city administrative services, namely, business administration and management of



**TTAB**

Mark G. Chretien
Tel 713.374.3528
Fax 713.754.7528
chretienm@gtlaw.com

March 16, 2012

<u>**via U.S. First Class Mail**</u>

U.S. Patent and Trademark Office
Trademark Trial and Appeal Board
P O Box 1451
Alexandria, VA  22313-1451

Re:    U.S. Application No. 77/660,948
       Mark:  CITY OF HOUSTON TEXAS (and design)
       Our file:  044444.115600

Dear Sir:

Pursuant to 37 C.F.R. § 2.145, 15 U.S.C. § 1071(a)(2), and U.S. Ct. of App. Fed. Cir. R. 15, enclosed please find a copy of the Notice of Appeal filed on behalf of the City of Houston in connection with the above-referenced application.  We are simultaneously filing copies with the Office of the General Counsel of the U.S. Patent and Trademark Office and U.S. Court of Appeals for the Federal Circuit, as required.

We trust that the foregoing information is sufficient for your purposes; however, if you have any questions or require any further information, please do not hesitate to contact us.

Very truly yours,

GREENBERG TRAURIG, LLP

Mark G. Chretien

MGC/llg
Enclosures
cc:  Ben D. Tobor

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN**
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH COUNTY
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TYSONS CORNER
WASHINGTON, D.C.
WHITE PLAINS
*OPERATES AS GREENBERG TRAURIG MAHER LLP
**STRATEGIC ALLIANCE

03-19-2012

*HOU 407,533,039v3*

U S Patent & TMOfc/TM Mail Rcpt Dt #*1

GREENBERG TRAURIG, LLP ▪ ATTORNEYS AT LAW ▪ WWW.GTLAW.COM
1000 Louisiana Street ▪ Suite 1700 ▪ Houston, TX

374.3505

A243

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In the matter of:
Serial No.: 77/660,948
Filed: February 1, 2009
Mark: CITY OF HOUSTON TEXAS (and design)
Applicant: City of Houston

## NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

The City of Houston hereby appeals to the United States Court of Appeals for the Federal Circuit for review of the United States Patent and Trademark Office Trademark Trial and Appeal Board decision of January 18, 2012, affirming the Examining Attorney's refusal to register the above indicated mark. The decision was received on January 18, 2012. A copy of the decision being appealed is attached hereto.

Three copies of this notice are concurrently being filed with the clerk of the United States Court of Appeals for the Federal Circuit as set forth in Federal Circuit Rule 15, along with the fees specified by Federal Circuit Rule 52 and 28 U.S.C. §1913.

Respectfully submitted,

Date: 03/16/12

Mark G. Chretien
Ben D. Tobor
GREENBERG TRAURIG LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Phone: (713) 374-3528
Attorneys for Applicant
City of Houston

**EXPRESS MAIL NO. EM155394101US**

I hereby certify that this Notice of Appeal and a copy of the decision being appealed are being deposited with the United States Postal Service as "Express Mail Post Office to Addressee" under 37 C.F.R. 2.198 on the date indicated below and addressed to Office of the General Counsel, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450.

| 3-16-2012 | _Linda Guice_ |
|-----------|---------------|
| Date | Name:  Linda Guice |

**EXPRESS MAIL NO. ED955706530US**

I hereby certify that three (3) copies of this Notice of Appeal, along with a copy of the decision being appealed and a check for $450.00, are being deposited with the United States Postal Service as "Express Mail Post Office to Addressee" under 37 C.F.R. §2.198 on the date indicated below and addressed to U.S. Court of Appeals for the Federal Circuit, 717 Madison Place, NW, Rm. 401, Washington DC 20439.

| 3-16-2012 | _Linda Guice_ |
|-----------|---------------|
| Date | Name:  Linda Guice |

**CERTIFICATE OF MAILING**

I hereby certify that this Notice of Appeal and a copy of the decision being appealed are being deposited with the United States Postal Service as First Class Mail under 37 C.F.R. §2.197 on the date indicated below and addressed to U.S. Patent and Trademark Office, Trademark Trial and Appeal Board, P.O. Box 1451, Alexandria, VA 22313-1451.

| 3-16-2012 | _Linda Guice_ |
|-----------|---------------|
| Date | Name:  Linda Guice |

Respectfully submitted,

Dated:  February 4, 2013          By:      **/s/ Mark G. Chretien**

Mark G. Chretien
Ben D. Tobor
Anthony F. Matheny
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77021
Telephone: (713) 374-3528
Facsimile: (713) 754-7528
Attorneys for Appellant
City of Houston

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of February, 2013, I electronically filed

the foregoing JOINT APPENDIX with the Court's CM/ECF filing system, which

will automatically send a notice of filing to the following registered user:

Ms. Christina J. Hieber
Office of the Solicitor
United States Patent and Trademark Office
Mail Stop 8, PO Box 1450
Alexandria, Virginia  22313-1450

By:    __/s/ **Mark G. Chretien**____

Mark G. Chretien
Attorney for Appellant
City of Houston